Ginny JONES, Executrix of the Estate of Shelly Jones, Deceased, Ginny Jones in Her Own Right and Setter Chemical Corporation, Appellants

v.

HARLEYSVILLE MUTUAL INSURANCE COMPANY, Appellee.

Superior Court of Pennsylvania.

Argued Feb. 14, 2006.
Filed May 2, 2006.
Reargument Denied July 10, 2006.

Robert F. Mielnicki, Pittsburgh, for appellants.

Robert E. Dapper, Pittsburgh, for appellee.

BEFORE: FORD ELLIOTT, P.J., DEL SOLE, P.J.E. and JOYCE, J.

OPINION BY DEL SOLE, P.J.E.:

¶ 1 This is an appeal from an order granting Appellee Harleysville Mutual In-

surance Company's (Harleysville) motion for summary judgment. Appellants brought this action against their insurer, Harleysville, as a result of its denial of benefits under a policy which covered property loss due to fire. The trial court concluded that Appellants' breach of contract claim was barred by the policy's two-year contractual limitations period and that Harleysville's denial of coverage under the policy was reasonable thereby precluding recovery on Appellants' bad faith claim. We affirm.

¶ 2 Harleysville issued a policy to Appellant Setter Chemical Corporation (Setter) covering property located at 112 Franklin Street in Clymer, Pennsylvania. Appellant Ginny Jones (Jones), who was a principal officer of Setter, and her late husband Shelly Jones owned the subject property and leased it to Setter. The policy covered damage to the property suffered as a result of fire, but required that any legal action brought under the policy commence within two years after the date on which the direct physical loss or damage occurred.

¶ 3 The covered property was damaged by fire on August 1, 1999, and Jones promptly notified Harleysville of the loss. In September, Harleysville informed Jones that it had determined that the fire was incendiary in origin and that it planned on conducting a further investigation. Harleysville communicated with Jones in the following months, requesting copies of certain documents and the completion of certain forms. These communications were later made to the attorney hired by Jones on her behalf.

¶ 4 On July 27, 2000, Harleysville issued a letter to Jones denying her claim stating that its decision was based upon the defenses of arson, misrepresentation, fraud, certain business owner policy conditions Setter failed to meet and its failure to cooperate in the investigation of the claim. In August of 2000, the state police forwarded an Arson Reporting Immunity Act Request to Harleysville. Harleysville responded and forwarded materials it had obtained through the investigation of the claim to state trooper Jacob Andolina. On January 9, 2001, Andolina filed an affidavit of probable cause in support of Jones' arrest. The criminal complaint charged Jones with three counts of arson and single counts of causing or risking a catastrophe and insurance fraud. The case proceeded to a nonjury trial. At the conclusion of the criminal trial, Jones presented the court with a motion for judgment of acquittal. The court granted the motion and acquitted Jones of all charges on October 23, 2001.

¶ 5 Thereafter Harleysville was notified of the results of the criminal action and was advised that Appellants would be resubmitting the claim for property loss. Harleysville notified Jones in a letter dated March 25, 2002, that it was conducting additional investigation into her claim and was ordering a copy of the transcript from her criminal investigation. Jones was later notified by letter dated July 29, 2002, that Harleysville was affirming its previous decision with regard to liability for the fire and was denying Appellants' proof of loss and underlying claim.

¶ 6 Appellants filed a civil complaint against Harleysville on November 6, 2002.[1] Harleysville later filed a motion for summary judgment, which the trial court granted, precipitating Appellants' appeal to this Court.

---

1. The action was originally filed in the United States District Court for the Western District of Pennsylvania, but was later transferred to the Court of Common Pleas of Indiana County.

■ ¶ 7 Appellants initially argue that, contrary to the trial court's ruling, their breach of contract claim was not barred by the statute of limitations. They admit that under the terms of the contract they were required to take legal action within two years of the date of fire: August 1, 1999. They also do not dispute that they did not institute suit within the applicable time frame. However, they assert that their complaint, filed in November of 2002, should be considered timely because the limitation clause in the contract was suspended when criminal charges were brought against Jones. Appellants reason that because Harleysville took some role in the filing of the criminal charges, the limitation clause in the contract should be suspended. They further assert that the complaint was timely filed after Harleysville reaffirmed its earlier denial.

■ ¶ 8 A contractual limitation period can be extended or waived where the actions of the insurer lead the insured to believe the provision will not be enforced or where the insured's failure to comply is induced by the actions of the insurer. *General State Authority v. Planet Ins. Co.*, 464 Pa. 162, 346 A.2d 265, 267 (1975). Appellants argue that their failure to comply was a result of Harleysville's actions in assisting in the bringing of criminal charges against Jones. In support of this position they cite to this Court's plurality decision in *Diamon v. Penn Mut. Fire Ins. Co.*, 247 Pa.Super. 534, 372 A.2d 1218 (1977).

¶ 9 In *Diamon*, the appellants purchased a fire insurance policy covering their home and some personal property from the appellee, Penn Mutual (Penn Mutual). A fire later ensued, destroying the appellants' home and furniture. Penn Mutual rejected the appellants' proof of loss and refused to pay their claim. The same day, the district attorney filed a criminal complaint against the appellant-husband, charging him with filing a false proof of loss for claiming damage to furniture which had previously been removed from the home. The appellant-husband was found guilty of the criminal charge, but his conviction was later reversed and the matter *nolle prossed* after he secured a bulldozer and uncovered the furniture he claimed was missing from the rubble of his home. The appellants then filed a complaint against Penn Mutual which was untimely under the provisions of the applicable policy. Nevertheless, this Court ruled that the appellants' action was not barred by the applicable limitation clause. It was noted that the detective involved in the matter signed the criminal information "at the instigation" of Penn Mutual's insurance adjuster. *Id.* at 1222. The limitation clause was found to be suspended when Penn Mutual "made its mistaken charge against" the appellant-husband. *Id.* at 1223. The panel remarked that the record established that the district attorney filed the criminal charges against the appellant-husband "as a result of being told by [Penn Mutual's] adjuster that [the appellant-husband] had attempted to cheat the company." *Id.* at 1222.

¶ 10 While Appellants liken the *Diamon* case to the present factual situation, we agree with the trial court and find it factually distinguishable. In the present case Appellant can point to no evidence of record that Harleysville had a role in the filing of the criminal charges, unlike the situation in *Diamon* where the insurer was found to have instigated the criminal action. The role of the insurer in the institution of the criminal charges in *Diamon* was recognized as a distinguishing fact in *McElhiney v. Allstate Ins. Co.*, 33 F.Supp.2d 405 (E.D.Pa.1999) wherein the court stated: "Even if it is the law in Pennsylvania, the bad faith conduct al-

leged in *Diamon* involved an insurer which, without any apparent basis, caused criminal charges to be brought against the insured." *Id.* at 408. Here, the police investigation was an independent one and there is no evidence that Harleysville acted to initiate criminal charges. The investigating trooper testified that he was not contacted by any agent of Harleysville; rather, he initiated contacted with Harleysville and had the fire marshal from Harrisburg issue a letter and request for information to Harleysville through the Arson Reporting Immunity Act. The trooper was specifically questioned if "at any point in time, did anybody from Harleysville encourage you to bring these charges," and he responded, "no." Deposition testimony of Jacob E. Andolina Jr., 7/29/03, at 21.

¶ 11 "Where the statute of limitations is at issue, the burden of proof falls on the plaintiff to demonstrate that the cause of action is not barred by the passage of time and that his or her failure to file the action in timely fashion is excusable." *Corbett v. Weisband,* 380 Pa.Super. 292, 551 A.2d 1059, 1067 (1988). Appellants can offer no support for their position that the untimely filing of their complaint seeking recovery under the policy should be excused due to the actions of Harleysville.

¶ 12 Appellants further challenge the trial court's ruling regarding their bad faith claim. They assert that they produced evidence essential to a bad faith claim which presented material issues of fact to be submitted to a jury. In considering Appellants' bad faith claim, the trial court initially dismissed Harleysville's defense of the statute of limitations. It then concluded that Appellants' bad faith claim could not go forward where the record demonstrated that Harleysville conducted a reasonable investigation and had a rea-

sonable basis for denying the underlying claim.

¶ 13 While we agree with the trial court's ultimate ruling granting summary judgment in favor of Harleysville, we do so for a different reason. *See Frank v. Frank,* 833 A.2d 194–195 (Pa.Super.2003) (noting an appellate court may affirm a decision on grounds different from those considered by the trial court). We conclude that the bad faith claim is barred by the statute of limitations. The trial court correctly recognized that the applicable limitations period for Appellants' bad faith claim is two years from the date of the first claim denial. *See Ash v. Cont'l Ins. Co.,* 861 A.2d 979, 984 (Pa.Super.2004). *Adamski v. Allstate Ins. Co.,* 738 A.2d 1033, 1040 (Pa.Super.1999). The trial court then ruled that although Appellants did not file their action within two years of the date Harleysville first issued a denial, Harleysville acted to throw "Jones off guard as to the necessity of performing some duty under the policy" when it reopened its investigation of Appellants' claim and actively sought information before issuing a second denial letter. Trial Court Opinion, 5/17/05, at 17. The trial court then concluded that Appellants' bad faith claim began to run from the date of the second denial letter, making their complaint timely filed.

¶ 14 We cannot agree that the actions of Harleysville had any impact on Appellants' ability to seek recourse for the denial of coverage under the policy. The actions referred to by the trial court taken by Harleysville following Jones' acquittal could not have lulled Appellants from pursuing their rights under the policy when the applicable limitation period under the policy had expired before the criminal trial was completed. The limitation period expired in August of 2001, and the actions taken by Harleysville re-

ferred to by Appellants and the trial court were not undertaken until some time after Jones' acquittal in October of 2002. We have already held that the criminal proceeding did not act to extend the limitations period due to any actions by Harleysville and we cannot see how any actions taken by Harleysville after the expiration of the limitations period "threw Jones off guard" as to her duties under the policy. Appellants' time to act had ended.

¶ 15 Order affirmed.