J-A12040-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MOUNTAINSIDE HOLDINGS, LLC, DOUGLAS R. COLKITT, M.D., JOANNE RUSSELL, AND JEROME DERDEL, M.D., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| AMERICAN DYNASTY SURPLUS LINES INSURANCE COMPANY AND GREAT AMERICAN INSURANCE COMPANY, | |
| Appellees | No. 1243 MDA 2014 |

Appeal from the Order entered June 30, 2014,
in the Court of Common Pleas of Centre County,
Civil Division, at No(s): 2003-127

BEFORE:  BOWES, DONOHUE, and ALLEN, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED JUNE 25, 2015**

Mountainside Holdings, LLC, ("Mountainside")[1], Douglas R. Colkitt, M.D., ("Dr. Colkitt"), Joanne Russell, ("Ms. Russell"), and Jerome Derdel, M.D., ("Dr. Derdel"), (collectively "Appellants"), appeal from the trial court's June 30, 2014 order which granted summary judgment in favor of American Dynasty Surplus Lines Insurance Company and Great American Insurance Company, ("American Dynasty" and "GAF"[2], respectively, or collectively,

---

[1] Mountainside Holdings, LLC is the "assignee of EquiMed, Inc., ("EquiMed"). **See** Appellants' Brief at 16.

[2] GAF is also known as Great American Fidelity.  **See** Appellants' Brief at 3 n.1.

"Insurers"), relative to Appellants' breach of contract and bad faith claims. Appellants further appeal from the trial court's December 12, 2012 order, which granted Insurers' preliminary objections in the nature of a demurrer, and which dismissed Appellants' claims of intentional interference with contractual relations against Insurers as time-barred. Finding waiver, we affirm the trial court's orders.

The trial court set forth the factual background of this action as follows:

> [EquiMed] was a corporation with a principal place of business in State College, Centre County, Pennsylvania. EquiMed was incorporated on February 2, 1996 as a Delaware Corporation. EquiMed was a management company which, through its subsidiaries, provided comprehensive services to specialty medical providers, including radiation oncologists.
>
> [Dr. Colkitt] was an officer and director of EquiMed. [Ms. Russell] and [Dr. Derdel] are individuals who were officers and directors of EquiMed, Inc.
>
> On May 9, 1996, Steadfast Insurance Company [Steadfast] issued a Director and Officers Liability insurance Policy (hereinafter "Steadfast Policy") to [EquiMed]. The Steadfast Policy was a Primary Policy. The Steadfast Policy limit was $5 million. An insured person [was] defined as a "duly elected director or duly elected or appointed officer of the Company." Policy § III(F). A claim [was defined as] "a civil proceeding commenced by the service of a complaint or similar pleading ... against any Insured Person for a Wrongful Act, including any appeal therefrom." Policy § III(A)(2). A Loss [was defined as] "the amount which the Insured Persons become legally obligated to pay on account of each Claim ... made against them for Wrongful Acts for which coverage applies, including but not limited to, damages, judgments, settlements, and Defense Costs." Policy § III(H). The language of the "Pending or Prior Date" clause (hereinafter "PPD clause") states Claim made against any Insured Person ... based upon, arising out of, or

attributable to any demand, suit or proceeding pending, or order, decree or judgment entered against the Company or any Insured Person on or prior to the Pending or Prior Date set for in Item 8 of the Declarations, or the same or substantially the same fact, circumstance or situation underlying or alleged therein. Policy § IV(A)(2). The PPD clause date [under the Steadfast Policy was] January 24, 1996.

Around the time of the issuance of the Steadfast Policy, Reliance National Insurance Company [Reliance] issued an excess Director and Officers Liability Insurance Policy (hereinafter "Reliance Policy") to [EquiMed]. The Reliance Policy was an excess policy, secondary to the Steadfast Policy. The Reliance Policy limit was $5 million.

On or about February 25, 1997, Great American Insurance Company [GAF] issued a Director and Officers Liability insurance Policy (hereinafter "Policy" or "GAF Policy") to [EquiMed]. The GAF Policy was an excess policy, tertiary to the Steadfast Policy and Reliance Policy. The GAF Policy limit was $10 million. The GAF Policy was issued retroactively, so that the initial policy period was January 24, 1997 through January 24, 1999. A pertinent portion of key language of the [GAF] Policy stated:

... this Policy shall then apply subject to the following:

A. the terms, conditions, exclusion and endorsements of the Underlying Insurance; and

…

C. the terms, conditions, exclusions and endorsements of this Policy.

The Language of the "Prior or Pending Litigation" exclusion of the [GAF] Policy states[:]

The Insurer shall not be liable to make any payment for loss by reason of or in connection with any litigation, proceeding, administrative act or hearing brought prior to or pending as of 1/24/97 as well as any future litigation, proceeding, administrative act or hearing based upon any such pending or prior litigation, proceeding, administrative act or hearing or derived from the essential facts or circumstances underlying or alleged in any such pending or prior litigation, proceeding, administrative act or hearing.

On February 3, 1995, Sayed Rahman, M.D. filed suit against Oncology Associates, P.C., Oncology Services Corporation, and [Dr. Colkitt], alleging breach of contract, fraud, and tortious interference with contract in connection with Dr. Rahman's termination from employment at the Union Memorial Cancer Center in Baltimore, MD (hereinafter "Rahman Action"). [EquiMed] was not named in this action, nor could it be, as [EquiMed] did not exist until February 2, 1996. In his Complaint, Dr. Rahman alleged he was terminated from his position as a radiation oncologist, in part, because he questioned the billing practices of Oncology Services Corporation and Oncology Associates, P.C. As part of that litigation, [Appellants] (defendants in the Rahman action) filed a Motion In Limine To Exclude Evidence Of Alleged Overbilling. [Insurers'] Ex. 4. [Dr.] Colkitt was dismissed from the action prior to judgment being rendered.

On August 2, 1995, a *qui tam* complaint, brought pursuant to the False Claims Act, 31 U.S.C. §§3729-33, was filed against Oncology Associates, P.C., Oncology Services, [Dr. Colkitt], and [Dr. Derdel]. [EquiMed] was not named in this action, nor could it be, as [EquiMed] did not exist until February 2, 1996. The *qui tam* complaint was filed under seal in camera and was not served on any of [Appellants].

On August 12, 1996, an amended *qui tam* complaint was filed. The amended complaint was filed under seal *in camera*. The amended complaint added [EquiMed] and others to the action.

Oncology Associates, P.C. and Oncology Services were not at any time subsidiaries or associates of [EquiMed].

In December 1997, [EquiMed] learned of the *qui tam* action.

In a letter dated February 20, 1998, Marcy L. Colkitt [Dr. Colkitt's sister] informed Steadfast and Reliance that [Appellants] had learned in December of 1997 of the *qui tam* action, and that they had retained the law firm of Freishtat & Sandler to represent them.

On August 24, 1998, the United Stated intervened in the *qui tam* action and filed a Complaint. At the same time, the seal on the action was lifted. The Complaint was served on [Appellants].

On August 25, 1998, Marcy Colkitt notified [Insurers] and the other carriers that the seal had been lifted and subsequently provided a copy of the Government *qui tam* Complaint, and requested defense and indemnification.

On October 29, 1998 and November 10, 1998, [Appellants] notified [Insurers] of two new claims (*Neheme v. EquiMed, et al,* and *Skarinsky v. EquiMed*) [FN3: Securities Class Action suits], requesting the retention of Wolf-Block, Schorr and Solis-Cohen as lead counsel and Marcy L. Colkitt & Associates, P.C. as defense counsel.

In a letter dated May 17, 1999, [Insurers] sent a letter to [Appellants] denying coverage on the basis that coverage was barred by the Policy's Prior and Pending Litigation Exclusion. [Insurers'] letter went on to state that there may be as many as eight other reasons as to why coverage would be denied; however, given the conclusive bar of the Prior and Pending Litigation Exclusion on which [Insurers'] denial of coverage was premised, there was no need for [Insurers] to discuss them in detail. [Insurers'] letter also stated "If you have any additional information or materials that you would like [Insurers] to consider in connection with this matter, please contact me."

On May 6, 1999, [EquiMed] and [Appellants] filed a case against the primary insurer, Steadfast, in the Court of Common Pleas of Centre County, Pennsylvania — *EquiMed, Inc., et al v. Steadfast Insurance Company,* No 1999-0585 (hereinafter "EquiMed I") — seeking an injunction to force Steadfast to cover [Appellants'] defense costs in the *qui tam* action. On March 24, 2000, Reliance was brought into the action. [Insurers] in the instant action were never brought into [the] EquiMed I action. Steadfast claimed that their PPD clause barred [Appellants] from coverage based on the *Rahman* action. This Court held that the Steadfast Policy's PPD clause did not exclude [Appellants] from defense coverage from Steadfast in the *qui tam* action.

In December 1999 — January 2000, [Appellants] and the U.S. government agreed to settle the *qui tam* action for $10 million.

In February 2000, an involuntary chapter 7 bankruptcy petition was filed against [EquiMed] before the settlement could be memorialized and funded. A multitude of subsequent litigation ensued, and a final settlement for the *qui tam* action was renegotiated and approved.

- 5 -

The funding for the *qui tam* settlement was as follows: [Dr. Colkitt personally paid $122,000 dollars. National Medical Financial Services, a publically traded company which was never an EquiMed subsidiary and not insured by Insurers, paid $1,200,000 dollars. Three additional entities not owned by EquiMed or Dr. Colkitt paid $400,000 dollars respectively for a combined payment of $1,200,000 dollars. Onco. Services, a defendant in the *Rahman* action which was never an EquiMed subsidiary, paid $1,364,000 dollars. Nine additional professional corporations which were 100% owned by Dr. Colkitt, but which were never EquiMed subsidiaries nor insured by Insurers, paid a combined amount of $3,360,000 dollars. The U.S. Government withheld, due to overbilling, $2,961,000 dollars from these professional corporations, and used said monies as setoff funds towards the settlement.]

The *qui tam* settlement has been paid in full.

On October 3, 2001, Reliance was declared insolvent and placed into liquidation.

On January 14, 2003, [Appellants] filed a Writ of Summons in this Court, giving rise to the case, at bar.

In early 2004, [Appellants] settled with Reliance for $376,703.76.

On November 9, 2010, [Appellants] filed their Complaint.

On October 11, 2011, after Preliminary Objections were sustained in part, [Appellants] filed an Amended Complaint, adding a third count—Intentional Interference With Contractual Relations.

On November 4, 2011, [Insurers] filed Preliminary Objections, seeking dismissal on the grounds that [Appellants] did not seek leave to amend the Complaint beyond the limited resubmission authorized by the Court.

On December 12, 2012, the Court sustained in part [Insurers'] Preliminary Objections precluding [Appellants] from proceeding with Count III—Intentional Interference With Contractual Relations—of their claim, but allowing [Appellants] to proceed with the rest of the action.

On January 27, 2014, [Insurers] filed … [a] Motion for Summary Judgment. Both parties have submitted their briefs. On April 21, 2014, the Court held Oral Arguments.

Trial Court Opinion and Order on [Appellants'] Motion for Summary Judgment, ("Trial Court Opinion"), 6/30/14, at 2-9.

As to the action's procedural posture, the trial court set forth the following additional history:

On January 14, 2003, [Appellants] filed a Praecipe For Writ of Summons in a Civil Case against [Insurers]. On November 9, 2010, [Appellants] filed a Complaint alleging Breach of Contract and Bad Faith. On February 22, 2011, [Insurers] filed Preliminary Objections, in which they objected to, *inter alia*, [Appellants'] Complaint being defective under Pa.R.C.P. 1019(1), as [Appellants] had not included a copy of the insurance policy they referenced in the Complaint under which they were suing. On September 21, 2011, the Court sustained [Insurers'] objection and [o]rdered [Appellants] to file an Amended Complaint to cure the defect. On October 12, 2011, [Appellants] filed an Amended Complaint, adding Count III - Intentional Interference With Contractual Relations. On December 12, 2012, the Court dismissed [Appellants'] Count III, as said Count was added without consent of the adverse party or by leave of Court, as required by Pa.R.C.P. 1033, and Count III cannot succeed as it had passed the statute of limitations. On December 20, 2012, [Appellants] filed a Motion for Reconsideration Of Order Dated December 12, 2012 Sustaining, In Part, [Insurers'] Preliminary Objections, *Or In The Alternative*, To Certify Said Order To Allow [Appellants] To File An Interlocutory Appeal Under [42] Pa.C.S.A. Sec 702(b). On December 2, 2013, [Appellants] filed a renewed Motion for Reconsideration. On January 6, 2014, the Court DENIED [Appellants'] Motion for reconsideration, and included language in the Order to allow [Appellants] to file an interlocutory appeal, to wit:

The Court finds this Order involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from this Order may materially advance the ultimate termination of this matter.

On January 27, 2014, [Insurers] filed a Motion for Summary Judgment on Counts I and II of the Amended Complaint. On June 30, 2014, the Court issued an Opinion and Order GRANTING [Insurers'] Motion for Summary Judgment on both Counts. On July [7], 2014, [Appellants] timely filed a Notice of Appeal. On August 19, 2014, [Appellants] filed a Concise Statement of Matters Complained of On Appeal, in accordance in Pa.R.A.P. 1925(b).

Response to Concise Statement of Matters Complained of on Appeal, 9/22/14, at 1-2. In its September 22, 2014 Response to Appellants' Pa.R.A.P. 1925(b) statement, the trial court adopted as its Pa.R.A.P. 1925(a) opinion the trial court's prior December 12, 2012 and June 30, 2014 opinions and orders.

Appellants present the following issues for our consideration:

1. Did the trial court err in its Opinion and Order dated December 12, 2012 which sustained [Insurers'] Preliminary Objections and denied [Appellants'] Motion to Proceed With the Amended Complaint Containing Count III?

2. Did the trial court err in holding that [Appellants'] claim for Intentional Interference With Contractual Relations [was] time-barred and [Appellants] could not proceed upon same, even though [Appellants] pled that they discovered same within the two-year limitations period?

3. Did the trial court err in its Opinion and Order dated entered [sic] on June 30, 2014, which granted [Insurers'] motion for summary judgment on Count I (breach of contract) and Count II (bad faith) of the Amended Complaint?

4. Did the trial court err in holding that [Appellants] could not assert an insurance bad faith claim based on [Insurers'] interference with [Appellants'] defense of claims asserted under the policy and [Insurers'] interference with the two underlying insurance carriers ([Steadfast] and [Reliance])?

5. Did the trial court err in holding that [Appellants'] bad faith claim is time-barred?

- 8 -

6. Did the trial court err in holding that an insured's claim that an excess insurer acted in bad faith for denying a claim in bad faith is triggered when the claim is denied, even if at the time the excess carrier denies the claim, it had no duty to pay either defense or to indemnify the insured?

7. Did the trial court err in finding that [Appellants'] breach of contract claim failed because [Insurers] did not owe a duty of indemnification to [Appellants]?

8. Did the trial court err in holding that the excess insurance policy did not cover the claim such that [Insurers] [did not] breac[h] in failing to cover the claim?

Appellants' Brief at 1-3.

Initially, we note that Appellants' issues are waived for appellate review due to Appellants' deficient Pa.R.A.P. 1925(b) statement. Appellants' Pa. R.A.P. 1925(b) statement only sets forth the following six issues:

1. The trial court erred in its Opinion and Order dated December 12, 2012 which sustained [Insurers'] Preliminary Objections and denied [Appellants'] Motion to Proceed With the Amended Complaint Containing Count III.

2. The trial court erred when it found that [Appellants'] claim for Intentional Interference With Contractual Relations was time-barred and [Appellants] could not proceed upon same.

3. The trial court erred in its Opinion and Order dated entered [sic] on June 30, 2014, which granted [Insurers'] motion for summary judgment on Count I (breach of contract) and Count II (bad faith) of the Amended Complaint.

4. The trial court erred in its determination that [Appellants'] bad faith claim cannot proceed based on [Insurers'] interference with litigation defense and interference with the two underlying insurance carriers ([Steadfast] and [Reliance]).

5. The trial court erred in finding that [Appellants'] bad faith claim is time-barred.

6. The trial court erred in finding that [Appellants'] breach of contract claim failed because [Insurers] did not owe a duty of indemnification to [Appellants].

Appellants' Concise Statement of Matters Complained of on Appeal, 8/19/14, at 1-2. Appellants' Pa.R.A.P. 1925(b) statement did not assert, explain, or elucidate how, and in what respects, the trial court erred. *Id.* Appellants did not incorporate or reference any prior pleadings, arguments, briefs, or memoranda, or reiterate any arguments which Appellants had raised before the trial court. *Id.* Appellants' Pa.R.A.P. 1925(b) statement failed to include issues number 6 and 8, which Appellants set forth in their appellate brief. *Compare* Appellants' Brief at 2-3; Appellants' Concise Statement of Matters Complained of on Appeal, 8/19/14, at 2. Response to Concise Statement of Matters Complained of on Appeal, 9/22/14, at 3.

The trial court in its September 22, 2014 response to Appellants' Pa.R.A.P. 1925(b) statement observed that Appellants' statement was "too vague to allow the Court to respond." Response to Concise Statement of Matters Complained of on Appeal, 9/22/14, at 3. Specifically, the trial court, citing *Commonwealth v. Lemon,* 804 A.2d 34, 37 (Pa. Super. 2007), expressed:

'When the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review.' … 'When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues.' … 'In other words, a Concise Statement which is too vague to allow the court to identify issues raised on appeal is the functional equivalent of no Concise Statement at all.'

- 10 -

Response to Concise Statement of Matters Complained of on Appeal, 9/22/14, at 3. We agree with the trial court. Indeed, we have found waiver where:

> Appellant's Rule 1925(b) statement announced a very general proposition; namely, that the trial court erred when it granted [defendant's] summary judgment motion. Appellant's Rule 1925(b) statement did not reiterate the arguments Appellant raised in her opposition to Wyeth's motion for summary judgment. Appellant's statement was in fact so vague the trial court suggested Appellant had failed to preserve any issue for appellate review. In light of *Dowling, supra* and Rule 1925(b), we agree Appellant's issues are essentially waived on appeal.

*Lineberger v. Wyeth,* 894 A.2d 141, 148-149 (Pa. Super. 2006).

Based on the foregoing, Appellants' issues are waived for appellate review. Moreover, Appellants' issue number 6 and 8 as set forth in their appellate brief are additionally waived for Appellants' failure to include them in their Pa.R.A.P. 1925(b) statement. Even absent waiver, Appellants' six issues as listed in their Pa.R.A.P. 1925(b) statement, and restated in their appellate brief, fail.

Appellants' first and second issues challenge the trial court's order sustaining Insurers' preliminary objections in the nature of a demurrer regarding Appellants' claim of intentional interference with contractual relations. We recognize:

> As a trial court's decision to grant or deny a demurrer involves a matter of law, our standard for reviewing that decision is plenary. Preliminary objections in the nature of demurrers are proper when the law is clear that a plaintiff is not entitled to recovery based on the facts alleged in the complaint. Moreover,

when considering a motion for a demurrer, the trial court must accept as true all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts.

*Yocca v. Pittsburgh Steelers Sports, Inc.,* 578 Pa. 479, 854 A.2d 425, 436 (2004) (citations and internal quotation marks omitted). *Accord, Friedman v. Corbett,* --- Pa. ----, 72 A.3d 255, 257 n. 2 (2013). Furthermore,

Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint.... Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Joyce v. Erie Ins. Exch.,* 74 A.3d 157, 162 (Pa. Super.2013) (citation omitted).

**Little Mountain Community Ass'n, Inc. v. Southern Columbia Corp.,**

92 A.3d 1191, 1195 (Pa. Super. 2014).

We have explained:

Amendments to pleadings are permitted at any time, including before, during and after trial. PA.R.C.P., Rule 1033, 42 PA. Cons.Stat. Ann.; *Winterhalter v. West Penn Power Co.,* 355 Pa.Super. 17, 512 A.2d 1187, 1189 (1986). In discussing Rule 1033, this Court has stated:

Although no absolute right to amend exists, the courts of this Commonwealth have liberally construed the principle embodied in this rule. Consequently, courts have allowed amendments of pleadings *at any time,* as provided by the specific language of this statute.

- 12 -

*Id.* at 1189 (emphasis in original). Leave to amend pleadings is to be liberally granted. *Stalsitz v. Allentown Hospital,* 814 A.2d 766, 776 (Pa. Super. 2002), *appeal denied,* 578 Pa. 717, 854 A.2d 968 (2004). A party is to be given leave to amend its pleadings **when allowing the amendment will not unduly prejudice or surprise the adverse party.** *Somerset Community Hosp. v. Allan B. Mitchell & Associates, Inc.,* 454 Pa.Super. 188, 685 A.2d 141, 147 (1996). **Undue prejudice in this analysis has been defined as something more than a detriment to the other party, as any amendment would likely have the effect of harming the adverse party's interests.** The policy underlying this rule of liberal leave to amend is to insure that parties get to have their cases decided on the substantive case presented, and not on legal formalities. *Laursen v. General Hospital of Monroe County,* 494 Pa. 238, 244, 431 A.2d 237, 240 (1981); *Gallo v. Yamaha Motor Corp., U.S.A.,* 335 Pa.Super. 311, 484 A.2d 148, 150 (1984).

    However, "[a]n amendment introducing a new cause of action will not be permitted after the Statute of Limitations has run in favor of a defendant." *Stalsitz,* 814 A.2d at 776 (citation omitted). Only if the proposed amendment merely amplifies, as opposed to altering, the cause of action already averred, will it be allowed if the statute of limitations has run. *Id.*

                              \*\*\*

    **A new cause of action does arise, however, if the amendment proposes a different theory** or a different kind of negligence than the one previously raised *or if the operative facts supporting the claim are changed.* 2B Anderson *Pennsylvania Civil Practice,* §§ 1033.28 and 1033.31.

[*Reynolds v. Thomas Jefferson University Hospital,*], 676 A.2d [1205,] 1210 [Pa. Super. 1996] (quotation omitted).

***Chaney v. Meadville Medical Center,*** 912 A.2d 300, 303-305 (Pa. Super. 2006) (emphasis supplied).

Applying the above precepts, Appellants' first and second issues lack merit because Appellants' Count III claim for intentional interference with

- 13 -

contractual relations is time-barred. We have determined that a claim for intentional interference with contractual relations "is subject to a two-year statute [of limitations]." ***Maverick Steel Co., L.L.C. v. Dick Corporation/Barton Malow,*** 54 A.3d 352, 355 (Pa. Super. 2012). Appellants' original November 9, 2010 complaint averred that Insurers' May 17, 1999 denial of coverage "caused [Steadfast] and [Reliance] … to deny" Appellants' request for coverage under the Steadfast and Reliance insurance policies. Complaint, 11/9/10, paragraph 84. Appellants cite, *inter alia,* Insurers' May 17, 1999 denial and its effect on the underlying carriers as the basis for Appellants' October 2011 amended complaint seeking to add Count III against Insurers for their intentional interference with Appellants' contractual relations with Steadfast and Reliance. ***See generally*** Amended Complaint, 10/12/11. Appellants' original complaint specifically averred that Steadfast's denial of coverage "parroted" Insurers' denial letter. Complaint, 11/9/10, at paragraph 45. Appellants emphasized that this was evidence that Insurers' "ploy" to cause Steadfast and Reliance to deny Appellants' insurance claims "worked." ***Id****.* Accordingly, accepting as true Appellants' allegations that Insurers' May 17, 1999 denial of coverage intentionally interfered with Appellants' contractual relations with Steadfast and Reliance, causing those carriers to deny coverage, it is clear that Appellants' Count III claim for intentional interference with contractual relations within its October 12, 2011 amended complaint is untimely. Moreover, because Count III "proposes a different theory" of recovery against Insurers following the

expiration of the statute of limitations, Count III unduly prejudices and surprises Insurers by introducing an untimely new cause of action. **Chaney, supra,** at 303-305. Therefore, the trial court did not err in sustaining Insurers' preliminary objections in the nature of a demurrer and dismissing Count III as time-barred.

Appellants' third, fourth, and fifth issues challenging the trial court's June 30, 2014 order granting summary relief to Insurers regarding Appellants' bad faith claims likewise fail. In reviewing a trial court's grant of summary relief, we review "the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." **Chris Falcone, Inc. v. Ins. Co. of the State**, 907 A.2d 631, 635 (Pa. Super. 2006) (citation omitted). "Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered." **Id.**

Instantly, the trial court determined that Appellants' bad faith claims were time-barred. Bad faith claims are subject to a two-year statute of limitations pursuant to 42 Pa.C.S.A § 8371. **See Ash v. Continental Insurance Company,** 932 A.2d 877, 885 (Pa. 2007). "Where the statute of limitations is at issue, the burden of proof falls on the plaintiff to demonstrate that the cause of action is not barred by the passage of time and that his or her failure to file the action in timely fashion is excusable."

*Jones v. Harleysville,* 900 A.2d 855, 858 (Pa. Super. 2006) *citing Corbett v. Weisband*, 551 A.2d 1059, 1067 (1988).

Here, Appellants specifically averred that Insurers acted in bad faith when they denied coverage in their May 17, 1999 letter, and when Insurers subsequently successfully influenced Steadfast and Reliance to reject Appellants' insurance claims. Moreover, as the trial court observed:

In their Amended Complaint, [Appellants] allege,

[Insurers] acted in bad faith by *inter alia*, interfering with [Appellants'] defense, failing to investigate the claim for coverage of the Government *Qui Tam* Complaint promptly, by failing to investigate the claim in the time period proscribed by the Unfair Claim Settlement Act 31 P.S. Sec. 146.1 et seq., by violating the Unfair Insurance Practice Act, 40 P.S. Sec. 1171.5 for, *inter alia*, not promptly acknowledging and acting upon communications with the insured, for denying the claim and others based upon the actual knowledge and/or the knowingly reckless disregard for the truth, that the basis for the denial was in fact false and without merit, by investigating the claims with the intent to deny them regardless of their actual merit and by investigating the claims with animus towards its Insureds.

[Appellants'] Am. Compl. ¶ 145.

According to [Appellants'] Amended Complaint, [Insurers'] alleged acts, or failures to act, which gave rise to the instant Bad Faith claim, along with the dates in which they occurred, are as follows:

• Interfering with Plaintiffs' defense: May 17, 1999 (¶ 52); June 22, 1999 (¶ 104);

• Failing to investigate the claim for coverage of the Government *qui tam* Complaint promptly: February 20, 1998 through May 17, 1999 (¶ 51);

• Failing to investigate the claim: September 18, 1998 (¶ 35);

• Not promptly acknowledging and acting upon communications with the insured: February 20, 1998 (¶ 28); August 25, 1998 ¶¶ 29, 30, 98); October 29, 1998 (¶¶ 32, 33); December 2, 1998 (¶¶ 37, 38); December 8, 1998 (¶¶ 39, 40); March 24, 1999 (¶¶ 43, 44);

• Denying the claim: May 17, 1999 (¶ 48);

• Investigating the claims with the intent to deny: February 22, 1999 and February 23, 1999 (¶ 101).

[Appellants] began this action on January 14, 2003. As such, under *Ash, supra*, all alleged Bad Faith allegations occurring prior to January 14, 2001, fall outside the statute of limitations. Referring to [Appellants'] own Complaint, all of [Insurers'] alleged Bad Faith conduct occurred prior to the January 14, 2001 cut-off date; therefore, [Appellants'] Bad Faith claim is time-barred.

Trial Court Opinion, 6/30/14, at 15-16.

Appellants were aware of Insurers' allegedly tortious bad faith behavior as early as May 17, 1999. Therefore, Appellants' November 2010 complaint alleging bad faith, even when related back to the January 2003 writ of summons, is untimely. **See Adamski v. Allstate Insurance Co.,** 738 A.2d 1033, 1042 (Pa. Super. 1999).

While Appellants contend that they had only "recently … discovered GAF's tortious activity" prior to their amended October 12, 2011 complaint, this argument does not entitle them to relief. Appellants' Brief at 22; **see Patton v. Com. Trust Co.,** 119 A. 834, 836 (Pa. 1923) (internal citation omitted) ("If by diligence a fact can be ascertained the want of knowledge so caused is no excuse for a stale claim. The test is not what the plaintiff knows, 'but what he might have known, by the use of the means of

information within his reach, with the vigilance the law requires of him.'"); *see also Schaffer v. Larzelere,* 189 A.2d 267, 269 (Pa. 1963) ("Mere mistake, misunderstanding or lack of knowledge is not sufficient to toll the running of the statute."). Moreover, the record does not reflect that Insurers' actions were dilatory. *See Jones,* 900 A.2d at 858 (finding that an insured's bad faith claim against his insurer was time-barred, we expressed that "we [could] not agree that the actions of [the insurer] had any impact on [a]ppellants' ability to seek recourse for the denial of coverage under the policy[.]"). Appellants' third, fourth, and fifth issues fail.

Appellants' challenge discounts their own acknowledgment of the "well-established rule that a party's claim does not accrue until it is harmed." Appellants' Brief at 28. Appellants have repeatedly averred, as cited above, that Insurers' bad faith and tortious behavior towards Appellants harken back to 1998 and 1999, and well before the two-year period prior to the filing of Appellants' January 14, 2003 writ of summons. Appellants averred throughout their pleadings that Insurers' bad faith behavior harmed Appellants' ability to secure coverage from Steadfast and Reliance. Appellants even averred that Steadfast's June 17, 1999 coverage denial letter parroted Insurers' May 17, 1999 letter, and was a direct result of Insurers' strategy to preclude Appellants' coverage by Steadfast and Reliance. Accordingly, the trial court did not err in determining that under the circumstances of this case, Insurers' allegedly tortious bad faith behavior against Appellants accrued well before the January 2003 writ of summons,

such that Appellants' bad faith claims are untimely. The trial court did not err in granting summary relief to Insurers regarding Appellants' time-barred bad faith claims. **See Ash**, 932 A.2d at 885.

Appellants' sixth issue as listed in their Pa.R.A.P. 1925(b) statement challenges the trial court's treatment of Appellants' breach of contract claim. In their brief, Appellants maintain that "the trial court err[ed] in finding that [Appellants'] breach of contract claim failed because [Insurers] did not owe a duty of indemnification to [Appellants][.]" Appellants' Brief at 2. We disagree. In its lengthy opinion granting summary relief to Insurers, the trial court, viewing the record in the light most favorable to Appellants, assumed *arguendo* that Appellants expended a total of $5,099,053.04 in relation to the underlying *qui tam* actions. The trial court determined that "[t]his amount falls short, by almost half, of the amount required to trigger a duty for [Insurers] to indemnify [Appellants] under the policy." Trial Court Opinion, 6/30/14, at 27. The trial court reasoned that "[s]ince the duty for [Insurers] to indemnify [Appellants] was never triggered, [Appellants'] Breach of Contract claim must fail[.]" **Id.** We concur with the trial court's rationale. **See Donegal Mutual Insurance Company v. Long,** 597 A.2d 1124, 1127-1128 (Pa. 1991) (excess carrier is not required to "drop down" to cover losses that are within underlying carriers' layers of coverage, and observing "that the decision to refuse to transform an excess carrier into a primary carrier is consistent with the decisions of [multiple other] jurisdictions which have been called upon to address this issue"); **see also**

*Lexington Insurance Co. v. Charter Oak Fire Ins. Co.,* 81 A.3d 903, 910 (Pa. Super. 2013) (payment for losses will not be triggered under an excess policy prior to "actual payment of the relevant primary insurance").

Appellants seek to enlarge the monetary amount of their losses beyond the $5,099,053.04 as set forth by the trial court by including, *inter alia*, monetary losses relative to Dr. Colkitt's defense and settlement of the underlying *qui tam* claims which involved additional co-defendants consisting of other medical companies which Dr. Colkitt personally owned, and by citing Dr. Colkitt's loss of future income in relation to the sale of those entities. *See* Appellants' Brief at 36-44. As the trial court observed, however, those additional entities were never insured by Insurers, and therefore the losses pertaining to the closure of those entities or to monies expended in connection with the defense and settlement of *qui tam* claims on behalf of those entities cannot be converted into losses recoverable under Insurers' excess policy. Trial Court Opinion, 6/30/14, at 23-24.

We again note that Appellants included two additional issues in their appellate brief which were never included in their Pa.R.A.P. 1925(b) statement. Specifically, issue number 6 in their appellate brief asserts that "the trial court err[ed] in holding that an insured's claim that an excess insurer acted in bad faith for denying a claim in bad faith is triggered when the claim is denied, even if at the time the excess carrier denies the claim, it had no duty to pay either defense or to indemnify the insured." Appellants' Brief at 2. Appellants' issue number 8 asserts that the "trial court err[ed] in

holding that the excess insurance policy did not cover the claim such that [Insurers] [did not] breac[h] in failing to cover the claim[.]" *Id.* Since these issues were not included in Appellants' Pa.R.A.P. 1925(b) statement, we decline to reach them. *See* Pa.R.A.P. 1925; *see also Commonwealth v. Hill,* 16 A.3d 484, 494 (Pa. 2011) ("Our jurisprudence is clear and well-settled, and firmly establishes that: Rule 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) statement, when so ordered; any issues not raised in a Rule 1925(b) statement will be deemed waived; the courts lack the authority to countenance deviations from the Rule's terms; the Rule's provisions are not subject to *ad hoc* exceptions or selective enforcement; appellants and their counsel are responsible for complying with the Rule's requirements[.]").

In sum, Appellants' issues are waived for appellate review due to the deficiencies within their Pa.R.A.P. 1925(b) statement. Waiver notwithstanding, Appellants' issues fail. We affirm the trial court's December 12, 2012 order sustaining Insurers' preliminary objections in the nature of a demurrer as to Count III for intentional interference with contractual relations. Likewise, we affirm the trial court's June 30, 2014 order granting summary judgment in favor of Insurers and against Appellants regarding the bad faith and breach of contract claims.

Orders affirmed.

Judge Bowes concurs in the result.

Judge Donohue concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/25/2015</u>