J-A19039-15

2015 PA Super 264

| | | |
|---|---|---|
| MATTHEW RANCOSKY, ADMINISTRATOR DBN OF THE ESTATE OF LEANN RANCOSKY AND MATTHEW RANCOSKY, EXECUTOR OF THE ESTATE OF MARTIN L. RANCOSKY, | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : : | |
| WASHINGTON NATIONAL INSURANCE COMPANY, AS SUCCESSOR BY MERGER TO CONSECO HEALTH INSURANCE COMPANY, FORMERLY KNOWN AS CAPITOL AMERICAN LIFE INSURANCE COMPANY, | : : : : : : : | |
| Appellees | : | No. 1282 WDA 2014 |

Appeal from the Judgment entered on August 1, 2014
in the Court of Common Pleas of Washington County,
Civil Division, No. 2008-11797

BEFORE:  BENDER, P.J.E., JENKINS and MUSMANNO, JJ.

OPINION BY MUSMANNO, J.:                    **FILED DECEMBER 16, 2015**

Matthew Rancosky, Administrator DBN[1] of the Estate of LeAnn

Rancosky ("LeAnn"), and Executor of the Estate of Martin L. Rancosky

("Martin")[2] (collectively "Rancosky"), appeals from (1) the March 21, 2012

Order granting summary judgment on Martin's claims in favor of Washington

National Insurance Company ("Conseco"), as successor by merger to

---

[1] *De bonis non*.

[2] LeAnn and Martin instituted this lawsuit on December 22, 2008, by filing a Praecipe to issue a writ of summons.  LeAnn died on February 18, 2010, and her Estate was substituted as a plaintiff.  Martin died on June 24, 2013, and his Estate was substituted as a plaintiff.

Conseco Health Insurance Company ("Conseco Health"), formerly known as Capital American Life Insurance Company ("Capital American");[3] and (2) the Judgment on LeAnn's bad faith claim, entered on August 1, 2014, in favor of Conseco. We affirm the March 21, 2012 Order granting summary judgment in favor of Conseco and dismissing Martin's claims. We vacate in part the Judgment entered on August 1, 2014, and remand for a new trial on LeAnn's bad faith claim.

In 1998, LeAnn purchased the Cancer Policy from Conseco Health. LeAnn paid a monthly premium rate of $44.00 for the Cancer Policy. The premiums for the Cancer Policy were paid through automatic bi-weekly payroll deductions of $22.00, made by LeAnn's employer, the United States Postal Service ("USPS").

The Cancer Policy provides certain limited benefits to an insured diagnosed with an internal cancer while the policy is in effect including, *inter alia*, cash benefits and payment of surgical, hospitalization and treatment costs. The Cancer Policy requires notice of a claim, as follows:

---

[3] LeAnn initially purchased a cancer insurance policy in 1992 from Capital American. However, in 1998, Capital American changed its name to Conseco Health. That same year, the policy was converted to a Conseco Secure Pay II Family Cancer Policy, under policy No. 302-301-261, with an "Effective Date" of October 24, 1998 (the "Cancer Policy"). Conseco Health and Capital American were succeeded by Washington National Insurance Company. However, because the parties and the trial court have referred to Washington National Insurance Company as "Conseco" throughout these proceedings, we will do the same.

Written notice of a claim must be given within 60 days after the start of an insured loss or as soon as reasonably possible. The notice must be sent to us at our Administrative Office or to an authorized agent. The notice should include your name and policy number.

Cancer Policy, at 11.

The Cancer Policy requires proof of loss, in relevant part, as follows:

You must give us written proof, acceptable to us, within 90 days after the loss for which you are seeking benefits. If it is not reasonably possible to give written proof in the time required, we shall not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be given no later than one year plus 90 days from the date of loss unless the Policyowner was legally incapacitated during that time.

*Id*.[4]

The Cancer Policy contains a suit limitations clause, which provides as

follows:

You cannot take legal action against us for benefits under this policy:

- within 60 days after you have sent us written proof of loss; or

- more than three years from the time written proof is required to be given.

*Id*.

The Cancer Policy contains a Waiver of Premium ("WOP") provision,

which provides as follows:

---

[4] Commencing in 1998, when the Cancer Policy was converted to a family policy, LeAnn and Martin each became insured under the Cancer Policy as a "policyowner." Cancer Policy, at 2.

- 3 -

Subject to the conditions of this policy, premium payments will not be required after the Policyowner is:

- diagnosed as having cancer 30 days or more after the Effective Date; and

- disabled due to cancer for more than 90 consecutive days[5] beginning on or after the date of diagnosis.

After it has been determined that the Policyowner is disabled, we will waive premium payments for the period of disability, except those during the first 90 days of such period.

*Id*. at 8 (footnote added).

Pursuant to the Cancer Policy, "disabled"

Means that:

- for the first 24 months after loss begins you are unable, due to cancer, to perform all the substantial and material duties of your regular occupation; and

After 24 months, "disabled" means that:

- you are unable, due to cancer, to work at any job for which you are qualified by reason of education, training or experience;

- you are not working at any job for pay or benefits; and

- you are under the care of a physician for the treatment of cancer.

*Id*. at 3.

The WOP provision in the Cancer Policy requires proof of disability as

follows:

---

[5] Because the WOP provision requires the policyowner to be disabled for a period of more than 90 consecutive days, we will refer to this period as the "90-day waiting period."

You must send us a physician's statement containing the following:

- the date the cancer was diagnosed;

- the date disability due to cancer began; and

- the expected date, if any, such disability will end.

*Id*.[6]

The Cancer Policy states that the term "physician"

Means a person other than you or your spouse, parent, child, grandparent, grandchild, brother, sister, aunt, uncle, nephew or niece who:

- is licensed by the state to practice a healing art[;]

- performs services which are allowed by that license; and

- performs services for which benefits are provided by this policy.

*Id*. at 3.

On February 4, 2003, LeAnn, age 47, was taken to the emergency room due to intense abdominal pain. On February 7, 2003, exploratory surgery was performed, after which LeAnn was diagnosed with ovarian cancer. LeAnn remained in the hospital until February 15, 2003.

On April 11, 2003, LeAnn contacted Conseco and requested claim forms to seek benefits under the Cancer Policy. On April 12, 2003, Conseco

---

[6] Conseco's Claim Procedures and Claims Guideline Manual ("Manual") provides three ways to establish proof of disability: (1) a physician's statement; (2) a claim form; or (3) a phone call to the policyowner's physician. *See* Trial Court Opinion, 11/26/14, at 3 (citing Rancosky's Exhibit 75 and N.T. (Breach of Contract Trial), 5/7/13, at 147-49).

mailed LeAnn claim forms. On May 6, 2003, LeAnn mailed to Conseco two signed and completed claim forms, along with supporting documentation. Conseco received the claim forms and supporting documentation on May 13, 2003. In each of the claim forms, LeAnn indicated that she had been "unable to work in [her] current occupation" since her admission to the hospital on February 4, 2003. The supporting documentation provided by LeAnn included operative records for surgeries she had undergone, pathology reports indicating her diagnosis of Stage III ovarian cancer, and billing records for multiple hospitalizations, surgeries and related medical treatments.[7]

The claim forms initially submitted by LeAnn did not include any section that was required to be completed by a physician. However, the claim forms each included an authorization, signed by LeAnn, which authorized "any medical professional, hospital, or other medical-care institution, insurance support organization, government agency, insurance

_____

[7] The evidence of record indicates that, during the 90-day waiting period, LeAnn had received extensive medical care, including February 4, 2003 through February 15, 2003 (hospitalized, exploratory surgery performed); February 20, 2003 (port for chemotherapy inserted); February 25, 2003 (first chemotherapy treatment); February 26, 2003 (office visit); February 28, 2003 (mammogram); March 11, 2003 through March 19, 2003 (surgery for blood clots in lungs, remained hospitalized); March 26, 2003 (surgical staples taken out); April 2, 2003 (emergency room visit, chemotherapy treatment), April 8, 2003 through April 10, 2003 (hospitalized, chemotherapy treatment); April 18, 2003 to April 24, 2003 (daily blood testing); April 30, 2003 through May 1, 2003 (hospitalized, chemotherapy treatment).

company, employer or other organization, institution or person that has any information, records or knowledge of [LeAnn] or [her] health" to furnish such information to Conseco. *See* Conseco Claim Form, No. CA-458 (07/02), at 1 (unnumbered).

On May 15, 2003, Conseco made its first payment on LeAnn's claim in the amount of $3,065.00. On May 20, 2003, Conseco paid an additional $13,023.00 on LeAnn's claim.[8]

LeAnn's last day at work for USPS was February 4, 2003. However, she had unused vacation and sick days, which extended her employment status to June 14, 2003,[9] despite the fact that she did not work after February 4, 2003. As a result, LeAnn's last payroll deduction was made on June 14, 2003. On June 24, 2003, Conseco received LeAnn's last payroll-deducted premium payment on the Cancer Policy. However, because the premium payments were made in arrears, the final premium payment extended coverage under the Cancer Policy only to May 24, 2003.[10]

---

[8] Conseco's records indicate that these payments were made for three hospitalizations and three dates of medical care, as well as for the maximum amount of chemotherapy treatments covered per year by the Cancer Policy.

[9] LeAnn had applied for disability retirement, and on June 14, 2003, her application was approved.

[10] Utilizing February 4, 2003 as the inception of LeAnn's disability, the trial court determined that, by the time LeAnn's last payroll-deducted premium payment was received by Conseco, extending coverage under the Cancer Policy until May 24, 2003, the 90-day waiting period had expired. *See* Trial Court Opinion, 11/26/14, at 4.

Pursuant to a Conversion provision in the Cancer Policy, when LeAnn's payroll-deducted premium payments stopped in June of 2003, if additional premiums were due, Conseco was required to provide LeAnn with written notice of the required premium:

> CONVERSION: If this policy was issued on a payroll deduction … and after at least one premium payment you are no longer a member of that payroll group or organization, you may elect to continue insurance on an individual basis by remitting your premium through one of our standard direct payment methods. Notice of the required premium will be mailed to you at your last known address. Your premium rate will not be increased by this conversion.

Cancer Policy, at 1; *see also id*. at 10 (providing for direct payment methods upon transfer from payroll deduction).

Alternatively, the Cancer Policy provided that, if additional premiums were due, Conseco could elect to pay any premium owed by making a deduction from a claim payment to the insured: "[w]hen a claim is paid, any premium due and unpaid may, at our sole discretion, be deducted from the claim payment." *Id*. at 11.

Despite the notice provision in the Conversion provision, Conseco did not advise LeAnn that any premiums were due on the Cancer Policy following Conseco's receipt of the final payroll-deducted premium payment on June 24, 2003.

On May 20, 2003, LeAnn called Conseco and discussed WOP with a Conseco representative. On that same date, Conseco sent LeAnn a WOP

claim form. Conseco's records indicate that it sent LeAnn an additional WOP claim form on July 24, 2003.

On July 31, 2003, Conseco received another claim form from LeAnn, dated July 25, 2003, seeking coverage for an additional $4,130.00 in costs related to her initial hospitalization.[11] The claim form included an authorization, signed by Leann, which "authorize[d] any licensed physician, medical practitioner, pharmacist, hospital, clinic, other medical or medically related facility, federal, state or local government agency, insurance or reinsuring company, consumer reporting agency or employer having information available as to diagnosis, treatment and prognosis with respect to any physical or mental condition and/or treatment of [LeAnn], and any non-medical information about [LeAnn], to give any and all such information to [Conseco]." **See** Conseco Claim Form, No. CA-458 (07/02), at 1. On August 5, 2003, Conseco paid $1,035.00 on LeAnn's claim.

On November 13, 2003, LeAnn called Conseco to inquire about her WOP status, and was advised that no WOP claim form had been received by Conseco. LeAnn also requested insurance identification cards from Conseco. Conseco thereafter sent LeAnn another WOP claim form and identification cards.

LeAnn filled out and signed a WOP claim form on November 18, 2003. The WOP claim form included a section entitled "Physician Statement," which

---

[11] This claim form did not include a physician statement section.

- 9 -

had been completed, and signed by one of LeAnn's physicians on November 18, 2003. LeAnn believed that the completed WOP claim form had been submitted to Conseco. LeAnn also believed that her premiums had been waived, and that no further premiums were due on the Cancer Policy.

In May 2004, LeAnn's cancer recurred, and she began another course of chemotherapy treatment, wherein she was hospitalized overnight every three weeks for a chemotherapy session from June 2004 through April 2005.

On October 28, 2004, while LeAnn was receiving ongoing chemotherapy treatments, Martin was diagnosed with pancreatic cancer. However, Martin did not contact Conseco regarding his diagnosis or submit a claim for benefits.

In January 2005, eighteen months after Conseco had received LeAnn's last payroll-deducted premium payment, Conseco discovered that LeAnn's payroll deductions for the Cancer Policy had ceased. On January 28, 2005, Conseco sent a letter to LeAnn informing her that her payroll-deducted premium payments had stopped and that, in order to prevent the Cancer Policy from lapsing, she was required to tender a premium payment of $1,112.50 within 15 days. LeAnn did not respond to that correspondence. On March 9, 2005, Conseco sent a letter to LeAnn indicating that it had "recently conducted an audit of its cancer policies" and "[o]ur records indicate that you previously owned this type of policy, but ceased paying

premium on or about JUNE 24, 2003. This resulted in the lapsing of your coverage." Conseco Letter, 3/9/2005, at 1.[12]

On March 15, 2005, LeAnn called Conseco to inquire as to the status of the Cancer Policy. A Conseco representative advised LeAnn that the Cancer Policy had lapsed as of May 24, 2003. LeAnn indicated that she had been told that her premiums would be waived if she was diagnosed with cancer and totally disabled, and requested that the Cancer Policy be reinstated. The Conseco representative advised LeAnn to send in a claim form, a request to reactivate coverage, and a physician's statement on letterhead stating the date she was diagnosed and her disability dates.

On June 12, 2005, LeAnn sent Conseco a completed claim form, medical bills from 2004 and 2005, and a handwritten letter indicating her belief that she was on WOP status and requesting that the Cancer Policy be reinstated. In that correspondence, LeAnn noted that "[i]n June 2003, I spoke to a customer service associate about me going on disability and was told that I had a waiver of premium in my policy and a claim form would be sent out. My doctor and I filled out the form and returned it." On June 16, 2005, Conseco received LeAnn's correspondence and documentation. In the Statement of Loss section of the claim form, LeAnn indicated that her

---

[12] Despite Conseco's decision to terminate the Cancer Policy, a Conseco internal memo, issued in January 2004, acknowledged problems in the billing process for payroll deduction policies, and indicated that "Conseco is working with policyholders in an effort to allow their policy to remain current as valid claims are considered." Trial Court Opinion, 11/26/14, at 18.

ovarian cancer had recurred and that she had begun treatments for the cancer recurrence on June 9, 2004. The claim form submitted by LeAnn included a "Cancer Physician Statement" section "to be completed by Physician's Office" and signed by a physician. The claim form instructed the "Physician's Office" to provide, *inter alia*, the date of first diagnosis and hospital confinements.[13] The completed statement, signed by one of LeAnn's physicians on April 27, 2005, indicated that LeAnn's cancer had recurred in May 2004. However, the statement incorrectly indicated that LeAnn's cancer was initially diagnosed on February 2, 2003, and omitted any reference to her initial hospitalization from February 4, 2003 to February 15, 2003. The claim form also instructed the "Physician's Office" to "give dates of disability," with no further instruction. In response, the statement incorrectly indicated that LeAnn's "dates of disability" were "July 1, 2003 until unknown future time."

Conseco did not advise LeAnn that there was any problem with her request for WOP or her claim submission. On July 18, 2005, Conseco paid $16,200.00 on LeAnn's claim for medical services she had received in 2004 and 2005, despite informing her four months earlier that the Cancer Policy had lapsed in May 2003.

---

[13] The filing instructions on the claim form indicate that "CONSECO RESERVES THE RIGHT TO REQUEST ADDITIONAL INFORMATION ON ANY CLAIM FOR DETERMINATION OF BENEFITS." Conseco Claim Form, No. CA-458 (08/04), at 1 (unnumbered).

In February 2006, LeAnn's ovarian cancer returned.  On March 27, 2006, Conseco received a letter from LeAnn, dated March 24, 2006, wherein she restated that the Cancer Policy contained a WOP provision.  Attached to the letter was another completed claim form, which included a "Cancer Physician Statement" section "to be completed by Physician's Office" and signed by a physician.  The claim form instructed the "Physician's Office" to "give dates of disability," with no further instruction.  The completed statement, signed by one of LeAnn's physicians on March 16, 2006, indicated that LeAnn's "date[] of disability" was February 8, 2006, due to "ovarian cancer reoccurrence."  The claim form included an authorization, signed by LeAnn, which was the same as the authorization signed by LeAnn on July 25, 2003.  *See* Conseco Claim Form, No. CA-458 (06/05), at 3 (unnumbered).  A separate form entitled "Authorization for Claim Processing Purposes," also signed by LeAnn, was attached to the claim form, and "authorize[d] any licensed physician, medical practitioner, hospital, clinic, medical or medical related facility, the Veteran's Administration, insurance company, the Medical Information Bureau, Inc. (MIB), employer or Government agency to disclose personal information about [LeAnn]" to Conseco.  *See* Authorization for Claim Processing Purposes, No. CIG-HIPAA-CM-CHIC 09/03.

In correspondence dated April 12, 2006, Conseco denied LeAnn's claim for further benefits, stating "[y]our CANCER insurance coverage ended on 5-

24-03. Therefore, we cannot pay any benefits to you for the claims you submitted." Conseco Letter, 4/12/06, at 1.

LeAnn contacted Conseco by telephone on April 17, 2006, and again on May 10, 2006, each time restating her belief that she was on WOP status. The May 2006 telephone call was escalated to a supervisor, who advised LeAnn that Conseco had never received a completed WOP claim form, and that the Cancer Policy was not on WOP status.

On July 12, 2006, LeAnn contacted Conseco by phone and advised that she had a completed WOP claim form that she would be mailing to Conseco. On July 17, 2006, Conseco received the November 18, 2003 WOP claim form. The WOP claim form included a "Physician Statement" section "to be completed by Physician's Office" and signed by one of LeAnn's physicians. The WOP claim form directed the "Physician's Office" to provide LeAnn's "starting disability date due to cancer," with no further instruction. In the completed statement, the "Physician's Office" incorrectly indicated that LeAnn's "starting disability date due to cancer" was April 21, 2003. Additionally, the WOP claim form included an authorization, signed by LeAnn, which was the same as the authorization signed by LeAnn on July 25, 2003. **See** Waiver of Premium Claim Form, No. CA-4 (01/03), at 2.[14]

---

[14] Additionally, the WOP claim form indicates that "Conseco Health reserves the right to request additional information on any claim." Waiver of Premium Claim Form, No. CA-4 (01/03), at 1.

Conseco mailed LeAnn additional claim forms on August 3, 2006 and on August 24, 2006. On September 8, 2006, Conseco received another WOP claim form signed by LeAnn on August 18, 2006. The WOP claim form included a "Physician Statement" section "to be completed by Physician's Office" and signed by one of LeAnn's physicians. The WOP claim form directed the "Physician's Office" to provide LeAnn's "starting disability date due to cancer," with no further instruction. The completed statement, signed by one of LeAnn's physicians on August 27, 2006, incorrectly indicated that LeAnn's cancer was first diagnosed on December 7, 2003. The statement also indicated that LeAnn's "starting disability date due to cancer" was March 27, 2006, due to her "new chemo regimen." Attached to the WOP claim form were two authorizations, signed by LeAnn, which were the same as authorizations signed by LeAnn on November 18, 2003 and March 24, 2006. On September 14, 2006, Conseco sent a letter to LeAnn acknowledging its receipt of her recent claim filing, and indicating that her "claim will be reviewed and processed in the order it was received." Conseco Letter, 9/14/06, at 1.

One week later, in correspondence dated September 21, 2006, Conseco denied LeAnn's claim for further benefits, stating "[y]our CANCER insurance coverage ended on 5-24-03. Therefore, we cannot pay any benefits to you for the claims you submitted." Conseco Letter, 9/21/06, at

1. On November 30, 2006, LeAnn sent Conseco a letter, wherein she requested reconsideration of her claim denial, and noted, *inter alia*

> My last day of work was 02/04/2003. Through [USPS,] I had sick and annual leave which I used until my disability [retirement] was approved. My last paycheck[,] in which your premium was taken out[,] was June 14, 2003.
>
> * * *
>
> I am battling cancer. I shouldn't have to battle an insurance company who doesn't honor their contracts. I signed your contract in 1992 and had premiums paid through payroll deduction until June 14, 2003[,] at which time I went on disability retirement. I have filled out every form you sent me, some twice. I feel my cancer insurance coverage has been cancelled in error and believe my policy should be reinstated and reimbursed for the claims I submitted in March, 2006.

LeAnn's Letter, 11/30/06, at 1.

Conseco assigned Compliance Department analyst Dustin Kelso ("Kelso") to respond to LeAnn's November 30, 2006 letter. On December 20, 2006, Kelso sent LeAnn a letter indicating that "we are still researching your request and require additional time to respond." Conseco Letter, 12/20/06, at 1. In conducting such "research," Kelso reviewed the claim file, the Cancer Policy, the premium history, and documents in Conseco's central records department. On January 5, 2007, Kelso sent another letter to LeAnn, wherein he confirmed Conseco's position that the Cancer Policy had lapsed on May 24, 2003. Kelso faulted LeAnn for failing to notify Conseco that her premium payments had stopped in June of 2003, stating that "this is the insured's responsibility" to notify us "if an employee has

been terminated or went on a leave of absence." Conseco Letter, 1/5/07, at 1. Kelso indicated that the claim payment of $16,200.00, made on July 18, 2005, had been paid in error, but that because it was Conseco's error, it would not seek reimbursement from LeAnn. Kelso made no reference to LeAnn's representations in her November 30, 2006 letter that her last day of work was February 4, 2003, or that she had used accrued sick and annual leave from that date until her application for disability retirement was approved. Instead, Kelso simply indicated that LeAnn was not eligible for WOP because "the physician that completed the [WOP claim] form gave a disability date of April 21, 2003[,]"[15] and "the [Cancer P]olicy lapsed during the 90-day period before disability benefits are [*sic*] begin." ***Id***.[16]

Conseco made no further payment on LeAnn's claim. Conseco never offered to allow LeAnn to pay a premium payment that would cover the period from May 24, 2003 to July 21, 2003, which was the end of the 90-day

---

[15] Notably, the WOP claim form directs that it is "to be completed by Physician's Office," and there is no evidence that the disability date supplied in that form was provided by a physician, as opposed to office personnel.

[16] As stated above, the final payroll-deducted premium payment, made in June 2003, had extended coverage under the Cancer Policy to May 24, 2003. Using the April 21, 2003 date provided in the first completed WOP claim form as LeAnn's starting disability date, the 90-day waiting period required to trigger the waiver of LeAnn's premiums would not expire until July 21, 2003, a date beyond the period for which premiums for the Cancer Policy had been paid. Conseco "accepted" April 21, 2003 as the starting date for LeAnn's disability. ***See*** Trial Court Opinion, 11/26/14, at 6. Accordingly, Conseco deemed the Cancer Policy to have lapsed on May 24, 2003, due to non-payment of premiums prior to the expiration of the 90-day waiting period on July 21, 2003.

waiting period triggered by the April 21, 2003 disability date "accepted" by Conseco.  Nor did Conseco deduct any premium owed by LeAnn from the $16,200 claim payment it made to her *after* it had discovered the premium deficiency.  Nor did Conseco ever tell LeAnn that, in order to waive her premiums, it simply needed a physician's statement indicating that she became disabled on or before February 24, 2003.

In June 2008, Conseco sent LeAnn a letter indicating that it had discovered an overage in premium payments made on her account, and that it was refunding $63.95 to her.  A check in this amount was enclosed with the letter.  Conseco admitted that it took five years for it to discover the overage issue.  A Conseco employee stated that even if it had applied the overage to LeAnn's account, it would have been insufficient to pay the full amount of premium required for the 90-day waiting period extending from the April 21, 2003 disability date "accepted" by Conseco.[17]

On December 22, 2008, LeAnn and Martin instituted this action against Conseco.[18]  In their Complaint, LeAnn and Martin alleged breach of contract,

---

[17] Conseco maintained that if it had applied the overage as a premium payment for the Cancer Policy, it would have extended the coverage only to June 24, 2003.  **See** Trial Court Opinion, 11/26/14, at 8.  As noted above, using the April 21, 2003 disability date, the 90-day waiting period required to trigger the waiver of LeAnn's premiums would not expire until July 21, 2003.

[18] LeAnn and Martin also brought claims against National Insurance Benefit Coordinators and Jack Clifford.  However, these parties were dismissed prior to trial and are not parties to this appeal.

bad faith, fraud, negligent misrepresentation, negligent supervision, breach of fiduciary duty, and violations of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL").[19] The Complaint was the first notice that Conseco had received regarding Martin's 2004 cancer diagnosis. After the close of discovery, Conseco moved for summary judgment. On March 21, 2012, the trial court granted summary judgment in favor of Conseco on all of Martin's claims. The trial court also granted partial summary judgment in favor of Conseco on all of LeAnn's claims except for her breach of contract and bad faith claims. Thereafter, LeAnn's remaining two claims were bifurcated. LeAnn's breach of contract claim was set for a jury trial, to be followed by a non-jury trial on her bad faith claim.

On May 14, 2013, following a trial, a jury returned a Verdict in favor of LeAnn, following its determination that Conseco had breached the Cancer Policy. The parties stipulated that the contractual damages were $31,144.50. Conseco filed post-trial Motions, which the trial court denied.

A non-jury trial on LeAnn's bad faith claim commenced on June 24, 2014, and concluded on June 27, 2014. On July 3, 2014, the trial court entered a Verdict in Conseco's favor. Rancosky filed post-trial Motions, which the trial court denied. On August 1, 2014, the trial court entered Judgment on both Verdicts. Rancosky filed a timely Notice of Appeal, and a court-ordered Concise Statement of Matters Complained of on Appeal.

---

[19] **See** 73 P.S. §§ 201-1 to 201-9.3.

On appeal, Rancosky raises the following issues for our review:

1. [Whether t]he trial court's July 3, 2014 Verdict and Finding that Conseco had not acted in violation of 42 Pa.C.S.A. § 8371 is in error[,] since it is neither supported by the evidence of record nor the Pennsylvania [a]ppellate [c]ourt's interpretations of what is meant by "a reasonable basis for denying benefits[?]"

   A. [Whether t]he trial court erred by finding it was reasonable for Conseco to deny the claim on the basis that the [Cancer P]olicy had [been] forfeited and lapsed[?]

   B. [Whether t]he trial court erred by finding it was reasonable for Conseco to place its interests above those of [LeAnn and Martin?]

   C. [Whether t]he trial court erred by finding Conseco['s] investigation was reasonable[,] since it was performed in an honest, objective and intelligent manner[?]

   D. [Whether t]he trial court erred in failing to consider [Conseco's] conduct in light of the standards contained in the Unfair Insurance Practices Act ["UIPA"], 40 P.S. [§] 1171.5(a)[?]

   E. [Whether t]he trial court erred by finding Conseco did not commit insurance bad faith under 42 Pa.C.S.A. § 8371 through its actions of creating a reasonable expectation of coverage[,] and then denying coverage[?]

2. [Whether t]he trial court erred in failing to consider [Conseco's] conduct toward [LeAnn] during the pendency of this litigation[,] in violation of [section] 8371[,] as interpreted by Pennsylvania [a]ppellate [c]ourt decisions[?]

3. [Whether t]he trial court erred in granting [Conseco's] Motion for Summary Judgment[,] and dismissing the individual claims of [] Martin [], for breach of contract and violations of [section] 8371[?]

Brief for Appellant at 5.

- 20 -

In his first issue, Rancosky contends that the trial court erroneously determined that no bad faith occurred because he "failed to prove that Conseco had a dishonest purpose" or a "motive of self-interest or ill-will" against LeAnn. Brief for Appellant at 29. (citing Trial Court Opinion, 11/26/14, at 19). Rancosky asserts that, pursuant to prevailing Pennsylvania law, bad faith is established when the insured demonstrates that the insurer (1) lacked a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim. Brief for Appellant at 30 (citing **Terletsky v. Prudential Prop. and Cas. Ins. Co.**, 649 A.2d 680, 688 (Pa. Super. 1994)). Rancosky claims that the trial court erred by determining that a "dishonest purpose" or "motive of self-interest or ill-will" is a third element required for a finding of bad faith, and that Rancosky failed to meet this erroneous standard of proof. Brief for Appellant at 31. Rancosky argues that a "dishonest purpose" or "motive of self-interest or ill-will" is merely probative of the second prong of the test for bad faith, as identified in **Terletsky**. Brief for Appellant at 30 (citing **Greene v. United Servs. Auto. Ass'n**, 936 A.2d 1178, 1190-91 (Pa. Super. 2007)). Rancosky contends that, rather than looking at Conseco's improper conduct toward LeAnn, the trial court erroneously looked for specific evidence of Conseco's self-interest or ill-will. Brief for Appellant at 34.

> Our review in a nonjury case is limited to whether the findings of the trial court are supported by competent evidence

and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the nonjury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the fact[-]finder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Hollock v. Erie Ins. Exchange*, 842 A.2d 409, 413-14 (Pa. Super. 2004) (*en banc*) (citations omitted).

Because the cornerstone of Rancosky's first issue is that the trial court committed error in the application of law by requiring Rancosky to prove a "dishonest purpose" or "motive of self-interest or ill-will" in order to establish bad faith on the part of Conseco, this issue raises a question of law. Accordingly, as with all questions of law, our standard of review is *de novo*, and our scope of review is plenary. *See Greene*, 936 A.2d at 1187.

Insurance bad faith actions are governed by 42 Pa.C.S.A. § 8371, which provides as follows:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3)    Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371.

The Pennsylvania legislature did not provide a definition of bad faith, as that term is used in section 8371, nor did it set forth the manner in which an insured must prove bad faith.    While our Supreme Court has not yet addressed these issues, this Court has ruled that, to succeed on a bad faith claim, the insured must present clear and convincing evidence to satisfy a two part test:  (1) the insurer did not have a reasonable basis for denying benefits under the policy, and (2) the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim.  **Terletsky**, 649 A.2d at 688.  "There is a requisite level of culpability associated with a finding of bad faith.  Merely negligent conduct, however harmful to the interests of the insured, is recognized by Pennsylvania courts to be categorically below the threshold required for a showing of bad faith." **Greene**, 936 A.2d at 1189.  Bad faith claims are fact specific and depend on the conduct of the insurer *vis à vis* the insured.  **Condio v. Erie Ins. Exchange**, 899 A.2d 1136, 1143 (Pa. Super. 2006).  The fact-finder must consider "all of the evidence available" to determine whether the insurer's conduct was "objective and intelligent under the circumstances." **Berg v. Nationwide Mut. Ins. Co.**, 44 A.3d 1164, 1179 (Pa. Super. 2012) (citations omitted).

A "dishonest purpose" or "motive of self-interest or ill will" is not a third element required for a finding of bad faith. *Greene*, 936 A.2d at 1191; *see also Nordi v. Keystone Health Plan West Inc.*, 989 A.2d 376, 385 (Pa. Super. 2010). A "motive of self-interest or ill will" may be considered in determining the second prong of the test for bad faith, *i.e.*, whether an insurer knowingly or recklessly disregarded its lack of a reasonable basis for denying a claim. *Greene*, 936 A.2d at 1190.

Here, the trial court determined that Rancosky "failed to show by clear and convincing evidence that [Conseco] did not have a reasonable basis for denying benefits [to LeAnn] under the [C]ancer [P]olicy." Verdict, 7/3/14, at 1 (unnumbered). Thus, the trial court entered judgment in favor of Conseco based on its determination that Rancosky failed to satisfy the *first* prong of the test for bad faith. However, the trial court appears to have reached this conclusion, at least in part, based on its determination that "[Rancosky] failed to prove that Conseco had a dishonest purpose" through "evidence of motive of self-interest or ill-will against [LeAnn]." Trial Court Opinion, 11/26/14, at 19; *see also id*. at 14-15 (citing, in support of its determination, Pennsylvania case law defining bad faith as conduct importing a "dishonest purpose" and breach of a known duty "through some motive of self-interest or ill-will"); Verdict, 7/3/14, at 1 (unnumbered) (citing, in support of its determination, Pennsylvania case law defining bad

faith as "conduct support[ing] a dishonest purpose and means a breach of contract duty through some motive of self-interest or ill-will.").

We conclude that the trial court's verdict is faulty based on its erroneous determination that Rancosky failed to establish the *first* prong of the test for bad faith because he failed to prove that Conseco had a dishonest purpose or a motive of self-interest or ill-will against LeAnn. As noted above, a dishonest purpose or a motive of self-interest or ill-will is probative of the *second* prong of the test for bad faith, rather than the *first* prong. **See Greene**, 936 A.2d at 1191; **see also Nordi**, 989 A.2d at 385. The trial court could not have *considered* whether Conseco had a dishonest purpose or a motive of self-interest or ill-will unless it had first determined that Conseco lacked a reasonable basis for denying benefits to LeAnn under the Cancer Policy. However, because the trial court made no such determination, its consideration of a dishonest purpose or a motive of self-interest or ill-will was improper. Accordingly, we conclude that the trial court erred as a matter of law by using standards applicable to the *second* prong of the test for bad faith in its determination of whether Rancosky had satisfied the *first* prong of the test for bad faith. **See Greene**, 936 A.2d at 1191; **see also Nordi**, 989 A.2d at 385.

Moreover, after due consideration of the competent evidence of record,[20] we conclude that the evidence does not support the trial court's determination that Conseco had a reasonable basis for denying benefits to LeAnn. **See** Trial Court Opinion, 11/26/14, at 19.

LeAnn was Conseco's insured and, therefore, a heightened duty of good faith was imposed on Conseco in this first-party claim because of the special relationship between the insurer and its insured, and the very nature of the insurance contract. **See Romano v. Nationwide Mut. Fire Ins. Co.**, 646 A.2d 1228, 1231 (Pa. Super. 1994) (holding that an insurer must act with the "utmost good faith" toward its insured).

> Individuals expect that their insurers will treat them fairly and properly evaluate any claim they may make. A claim must be evaluated on its merits alone, by examining the particular situation and the injury for which recovery is sought. An insurance company may not look to its own economic considerations, seek to limit its potential liability, and operate in a fashion designed to "send a message." Rather, it has a duty to compensate its insureds for the fair value of their injuries. Individuals make payments to insurance carriers to be insured in the event coverage is needed. It is the responsibility of insurers to treat their insureds fairly and provide just compensation for covered claims based on the actual damages suffered. Insurers do a terrible disservice to their insureds when they fail to evaluate each individual case in terms of the situation presented and the individual affected.

**Bonenberger v. Nationwide Mut. Ins. Co.,** 791 A.2d 378, 382 (Pa. Super. 2002).

---

[20] The trial judge in this case found certain witnesses to be more credible than others. Thus, the credibility determinations by the trial judge will not be disturbed. **See Hollock**, 842 A.2d at 414.

Section 8371 is not restricted to an insurer's bad faith in denying a claim. *See Condio*, 899 A.2d at 1142 (holding that the term "bad faith" encompasses a wide variety of objectionable conduct). Indeed, "the broad language of [s]ection 8371 was designed to remedy *all* instances of bad faith conduct by an insurer." *Hollock*, 842 A.2d at 415 (emphasis added). Implicit in section 8371 is the requirement that the insurer properly investigate claims prior to refusing to pay the proceeds of the policy to its insured. *Bombar v. West Am. Ins. Co.*, 932 A.2d 78, 92 (Pa. Super. 2007). Accordingly, bad faith conduct includes lack of good faith investigation into the facts. *See Condio*, 899 A.2d at 1142; *see also Hollock*, 842 A.2d at 415 (stating that an action for bad faith may also extend to the insurer's investigative practices); *O'Donnell ex rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa. Super. 1999) (same). Bad faith conduct also includes evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance. *See Zimmerman v. Harleysville Mut. Ins. Co.*, 860 A.2d 167, 172 (Pa. Super. 2004); *see also Terletsky*, 649 A.2d at 688 (defining bad faith on the part of an insurer as any "frivolous or unfounded refusal to pay proceeds of a policy").

Here, the WOP provision of the Cancer Policy requires a determination that the policyowner is "disabled," as follows: "After it has been determined

that the policyowner is disabled, we will waive premium payments for the period of disability…." Cancer Policy, at 8. While the Cancer Policy does not specify who is to make such determination, Conseco was ultimately responsible for making that determination, and ensuring that such determination was made diligently and accurately, pursuant to a good faith investigation into the facts. **See Condio**, 899 A.2d at 1142; **see also Mohney v. Washington National Ins. Co.**, 116 A.3d 1123, 1135 (Pa. Super. 2015) (holding that the insurer was required to conduct an investigation sufficiently thorough to provide it with a reasonable foundation for its actions); **Bonenberger**, 791 A.2d at 382 (holding that "[i]t is the responsibility of insurers to treat their insureds fairly and provide just compensation for covered claims based on the actual damages suffered.").

Conseco premised its denial of claim benefits to LeAnn on the April 21, 2003 date of disability provided in the "Physician Statement" included in the November 18, 2003 WOP claim form. Although the WOP provisions of the Cancer Policy require the submission of a "physician's statement," the Cancer Policy does not define "physician's statement."[21] However, the

---

[21] Notably, the WOP provision of the Cancer Policy merely requires that the insured provide a "physician's statement." Nowhere in the WOP provision of the Cancer Policy does it specify that the *only* type of "physician's statement" that can be used is one that is included in a WOP claim form, as opposed to one included in a another type of claim form supplied by Conseco. Indeed, the "Physician Statement" section contained in the WOP claim forms seeks virtually the same information as is requested in the "Cancer Physician Statement" section contained in the other claim forms provided by Conseco. Moreover, each of the four physician statements

Cancer Policy defines a "physician" as a person who is (1) licensed by the state to practice a healing art; and (2) performs services which are allowed by that license and for which benefits are provided by the Cancer Policy. *See* Cancer Policy, at 3. Notably, the WOP and other claim forms provided by Conseco, which include a "physician's statement" section, are to be completed by the "Physician's Office," rather than by a "physician." Thus, while the WOP provisions of the Cancer Policy require a *licensed physician* to provide a statement containing "the date disability due to cancer began," the claim forms provided by Conseco direct the "Physician's Office" to provide this crucial information.

Moreover, despite the occupation-related definitions for "disability" set forth in the Cancer Policy, Conseco provided no explanation in any of its claim forms that the term "disability" relates solely to the insured's ability to perform his or her occupational duties. Indeed, none of the claim forms that Conseco provided to LeAnn, which included a physician's statement, explained that the "Physician's Office" was initially required to identify the "substantial and material duties" of LeAnn's position with the USPS, and to

---

completed by LeAnn's physicians, whether in a WOP claim form or other claim form, appears to have been completed by the *same* "Physician's Office" personnel working in the *same* office.

further determine when she first became unable to perform such duties.[22]

Having been given no instruction whatsoever regarding the Cancer Policy definitions for the term "disabled," the "Physician's Office" was free to attribute any potential definition to the term "disabled" when completing the physician's statement in LeAnn's claim forms, including a definition unrelated to her occupation or qualifications. Thus, Conseco improperly delegated to the "Physician's Office" the responsibility for making a determination as to when LeAnn first became "disabled," without providing the essential criteria – *as set forth in the Cancer Policy* - to be used in making this determination. **See Hollock v. Erie Ins. Exchange**, 54 Pa. D. & C. 4th 449, 508 (Com. Pl. 2002), *affirmed*, 842 A.2d 409 (Pa. Super. 2004) (*en banc*) (holding that an insurer's investigation can be inadequate when it relies on a physician's report without determining whether the physician has a complete understanding of the insured's occupation); **see also Greco v. The Paul Revere Life Ins. Co.**, 1999 U.S. Dist. LEXIS 110, **15-17 (E.D. Pa. 1999) (wherein the district court held that the insurer's reliance upon a physician's determination that the insured was not disabled, when the physician was not provided with the correct policy definition of "disability," did not have a complete understanding of the insured's occupation, and was not familiar

---

[22] Nor did any of Conseco's claim forms advise the "Physician's Office" that, after the first 24 months of LeAnn's "loss" (*i.e.*, after February 4, 2005), they were required to identify her "qualifications," "by reason of education, training or experience," and to thereafter determine whether she was unable to perform any job for which she was qualified.

with the important functions involved in some aspects of the insured's occupation, provided evidence from which a fact-finder could determine that the insurer acted in bad faith when it ceased payments on the insured's claim).[23]    Accordingly, we conclude that the completed physician's statements received by Conseco *did not indicate* when LeAnn first became "unable, due to cancer, to perform all the substantial and material duties of [her] regular occupation," and, therefore, *did not provide* Conseco with a proper basis for determining when LeAnn first became "disabled" pursuant to the terms of the Cancer Policy.

Notably, Conseco was informed by LeAnn, at the outset of her claim, that she had been "disabled," as that term is defined in the Cancer Policy, for more than 90 consecutive days from her first hospitalization on February 4, 2003.  LeAnn's initial claim forms, signed by her on May 6, 2003, advised Conseco that she had been "unable to work in [her] current occupation" throughout the 90-day waiting period, which would have expired on May 5, 2003.[24]

---

[23] Although this Court is not bound by federal court opinions interpreting Pennsylvania law, we may consider federal cases as persuasive authority. **See Cambria-Stoltz Enters. v. TNT Invs.**, 747 A.2d 947, 952 (Pa. Super. 2000).

[24] Notably, each of the claim forms completed and signed by LeAnn on May 6, 2003 included the following:  "WARNING:  Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison."  Conseco Claim Form, No. CA-458 (07/02), at 1 (unnumbered).

Conseco's subsequent receipt of differing disability dates, which indicated later dates for the start of LeAnn's disability, should have prompted Conseco to undertake an investigation into the starting date of LeAnn's disability. So too should the documentation attached to LeAnn's initial claim forms, which evidenced that, *during the 90-day waiting period*, she spent a total of 26 days in the hospital and underwent numerous other medical treatments and chemotherapy sessions. However, Conseco conducted no such investigation. Rather, Conseco merely "accepted" April 21, 2003 as the starting date for LeAnn's disability,[25] thereby permitting Conseco to maintain its position that the Cancer Policy had lapsed due to non-payment of premiums prior to the expiration of the 90-day waiting period.

Additionally, given the extensive documentation and medical records that Conseco received and processed in order to approve claim payments to LeAnn, Conseco should have recognized that some of the information contained in the four physician's statements it had received was incorrect (*i.e.*, that LeAnn was first diagnosed with ovarian cancer on December 7, 2003), thereby rendering the other information contained therein as suspect. ***See Condio***, 899 A.2d at 1145 (holding that, if evidence arises that discredits the insurer's reasonable basis, the insurer's duty of good faith and

---

[25] By the time Conseco decided to "accept" April 21, 2003 as the starting date of LeAnn's disability, it had received two other dates (*i.e.*, February 4, 2003 and July 1, 2003) for the start of LeAnn's disability.

fair dealing *requires* it to reconsider its position); *see also Hollock,* 842 A.2d at 413 (noting the trial court's determination that the insurer acted in bad faith based on, *inter alia*, its failure to re-evaluate the value of the insured's claim, despite having received several pieces of information which should have caused it to re-evaluate the claim value).

Conseco provided no reasonable or rational explanation for its delay in investigating LeAnn's claim. *See* Trial Court Opinion, 11/26/14, at 19 (concluding that "Conseco waited entirely too long to begin such an investigation[,] given the number and frequency of [LeAnn's] communications with the company regarding her WOP provision"). The record reflects that Conseco did not *purport* to conduct any investigation regarding LeAnn's claim until it received LeAnn's request for reconsideration in December of 2006, eighteen months after it had first received conflicting information regarding the starting date of LeAnn's disability. By that time, Conseco had received eight authorizations signed by LeAnn, some under threat of criminal penalties, each of which permitted Conseco to contact her physicians, employer, and any other individual or entity that might possess information regarding the date when she first became "unable, due to cancer, to perform all the substantial and material duties of [her] regular occupation." However, despite requiring that LeAnn sign these

authorizations,[26] Conseco never bothered to use them to obtain the information that it needed in order to make an accurate determination as to the starting date of her disability.[27]

Indeed, when Conseco finally undertook to investigate LeAnn's claim in December 2006, Conseco did not contact LeAnn's employer, USPS, to determine the "substantial and material duties" of LeAnn's position at the time she was diagnosed with ovarian cancer, the last day she worked at USPS, or whether she had, in fact, used annual and sick leave to extend her payroll status to June 14, 2003. **See Hollock**, 842 A.2d at 413, 419-20 (noting the trial court's determination that the insurer had acted in bad faith by, *inter alia*, refusing to contact the insured's employer to determine the extent of her inability to complete assigned tasks). Nor did Conseco contact the Social Security Administration to determine the basis for its award of disability retirement benefits to LeAnn, or the date of such award.

Nor did Conseco contact any of LeAnn's physicians to determine when LeAnn first became unable to perform the "substantial and material duties" of her position at USPS. **See Mohney**, 116 A.3d at 1135 (holding that the

---

[26] As noted previously, Conseco also repeatedly reserved its rights to request additional information regarding LeAnn's claim.

[27] The trial court supported its determination that Conseco had a reasonable basis for denying LeAnn's claim by stating that that "Conseco did always respond to [LeAnn's] requests promptly, whether via telephone or in writing, and it relied upon the terms of [the Cancer P]olicy." Trial Court Opinion, 11/26/14, at 19. However, these actions, alone, were insufficient to satisfy Conseco's duty of good faith and fair dealing to LeAnn.

insurer's investigation was not sufficiently thorough to obtain the necessary information regarding the insured's ability to work, noting that the insurer made no attempt to contact the insured's physician to obtain clarifying information, and terminated the insured's benefits without obtaining an independent medical examination); *see also Mineo v. Geico*, 2014 U.S. Dist. LEXIS 95686 at *15, *22 (W.D. Pa. 2014) (denying the insurer's motion for partial summary judgment on the insured's claim for bad faith, and holding that the insurance company must conduct a "meaningful investigation," which may include an in-person interview, examination under oath, medical authorizations, and/or independent medical examinations, and noting that the insurer "did not attempt any of the foregoing."); *Bonenberger*, 791 A.2d at 381 (noting that the trial court determined that the insurer acted in bad faith when it, *inter alia*, disregarded the insured's medical records, conducted no independent medical examination, and made no reasonable evaluation based on the insured's presentment).

Rather, Conseco, through Kelso, merely reviewed the claim file, the Cancer Policy, the premium history, and documents in Conseco's central records department. *See* N.T. (Bad Faith Trial), 6/27/13, at 235-42; 6/26/13, at 122. In other words, Kelso, in conducting Conseco's *first* investigation of LeAnn's claim, albeit in response to LeAnn's request for reconsideration, simply reviewed the limited and conflicting information in Conseco's records. *See id*. Kelso made no effort to obtain further

information to resolve the discrepancies presented therein, and simply reaffirmed Conseco's prior denial of coverage based on the April 21, 2003 disability date provided in the "Physician Statement" contained in the November 23, 2003 WOP claim form.[28]  **See** Conseco Letter 1/5/07, at 1; **see also Mohney**, 116 A.3d at 1135-36 (holding that the insurer's investigation was neither honest nor objective, because the claims adjuster focused solely on information that supported denial of the claim, while ignoring the information that supported a contrary decision).  Had Conseco conducted a meaningful investigation into the starting date of LeAnn's disability, it would have determined that she had been "disabled due to cancer for more than 90 consecutive days," beginning on February 4, 2003, and that she was entitled to the WOP benefit provided by the Cancer Policy.

For this reason, we conclude that the competent evidence of record clearly and convincingly established that Conseco lacked a reasonable basis to deny LeAnn benefits under the Cancer Policy.  Conseco owed LeAnn a duty of good faith and fair dealing, but failed to fulfill its statutory and contractual obligations to her.  When Conseco finally undertook to investigate LeAnn's claim in December of 2006, following its receipt of her request for reconsideration, Conseco's claim file contained conflicting facts regarding LeAnn's date of disability.  When an insurer is presented with conflicting facts that are material to the issue of coverage, the insurer may

---

[28] As noted previously, we conclude that it was not reasonable for Conseco to rely on the disability dates provided in the physician statements.

not merely select or, as here, passively "accept," a singular disputed fact, which provides the insurer with a basis to deny coverage. Rather, the insurer must actively undertake a meaningful investigation to obtain accurate information bearing upon the coverage inquiry. Because Conseco failed to undertake a meaningful investigation as to the date when LeAnn first became "unable, due to cancer, to perform all the substantial and material duties of [her] regular occupation," despite being presented with conflicting information regarding this crucial fact, it lacked a reasonable basis to conclude that LeAnn was not disabled until April 21, 2003, and, hence, not entitled to WOP.

Because the sole basis for the trial court's verdict on LeAnn's bad faith claim against Conseco was that Rancosky failed to establish the first prong of the test for bad faith (*i.e.*, that Conseco lacked a reasonable basis for denying benefits to LeAnn under the Cancer Policy), we need not determine whether the evidence of record supports a finding regarding the second prong (*i.e.*, that Conseco knew of or recklessly disregarded its lack of a reasonable basis in denying benefits to LeAnn). **See Terletsky**, 649 A.2d at 688.[29] This issue must be determined by the trial court upon remand.

With regard to LeAnn's bad faith claim, we acknowledge that Conseco contends that her claim is barred by the two-year statute of limitations

---

[29] Because we conclude that Conseco lacked a reasonable basis to deny benefits to LeAnn under the Cancer Policy, raised as issue 1, we need not address Rancosky's sub-issues at 1.A. through 1.E.

applicable to bad faith actions.[30]  Brief for Appellee at 37-43.[31]  However, we conclude that LeAnn's bad faith claim is not time-barred.

Generally, for purposes of applying the statute of limitations, a claim accrues when the plaintiff is injured.  *See **Adamski v. Allstate Ins. Co.***, 738 A.2d 1033, 1042 (Pa. Super. 1999).  In the context of an insurance claim, a continuing or repeated denial of coverage is merely a continuation of the injury caused by the initial denial, and does not constitute a new injury that triggers the beginning of a new limitations period.  *See **id***. at 1042 (holding that the insured may not separate initial and continuing refusals to provide coverage into distinct acts of bad faith).

However, there is an important distinction between an initial act of alleged bad faith conduct and later independent and separate acts of such conduct.  *See **id.*** at 1040.  When a plaintiff alleges a subsequent and separately actionable instance of bad faith, distinct from and unrelated to the initial denial of coverage, a new limitations period begins to run from the later act of bad faith.  *See **id.***  An inadequate investigation is a separate and independent injury to the insured.  *See **Romano***, 646 A.2d at 1232 (holding that bad faith conduct includes lack of good faith investigation).

[30] *See **Ash v. Continental***, 861 A.2d 979, 984 (Pa. Super. 2004) (holding that bad-faith claims under section 8371 are subject to a two-year statute of limitations).

[31] Conseco raised this issue in a Motion for directed verdict during the bad faith trial.  The trial court took the matter under advisement, but never ruled on the Motion.  Instead, the trial court entered a Verdict in favor of Conseco on LeAnn's bad faith claim.

Additionally, a refusal to reconsider a denial of coverage based on new evidence is a separate and independent injury to the insured. *See Condio*, 899 A.2d at 1145 (holding that, if evidence arises that discredits the insurer's reasonable basis for denying a claim, the insurer's duty of good faith and fair dealing *requires* it to reconsider its position and act accordingly, and noting that the section 8371 good faith duty is an ongoing vital obligation during the *entire* management of the claim). The statute of limitations for such injuries begins to run, in the first instance, when the insurer communicates to the insured the results of its inadequate investigation, and in the latter instance, when the insurer communicates to the insured its refusal to consider the new evidence that discredits the insurer's basis for its claim denial. *See Adamski*, 738 A.2d at 1040.

Here, when Conseco first undertook to conduct an investigation regarding LeAnn's claim in December of 2006, it was presented with conflicting information regarding the starting date of LeAnn's disability, a fact which ultimately provided the *sole* basis for Conseco's denial of LeAnn's claim. Despite LeAnn's representation in her initial claim forms that she had been unable to work since February 4, 2003, Conseco had been presented with conflicting evidence as to whether LeAnn continued to work beyond February 4, 2003, including LeAnn's continued payroll deductions through June 14, 2003, and the differing disability dates provided in the physician's statements. Based on such conflicting information, when Conseco undertook

to investigate LeAnn's claim, it was required to conduct such investigation in good faith, in order to accurately determine the starting date of LeAnn's disability. **See Condio**, 899 A.2d at 1142.

Moreover, in her November 30, 2006 letter, LeAnn advised Conseco, *for the first time*, that, although her last day of work was February 4, 2003, her automatic payroll deductions had continued until June 14, 2003, because she used her accrued sick and annual leave from February 4, 2003, until June 14, 2003, when her application for disability retirement status was approved.[32] This new information discredited Conseco's basis for the denial of LeAnn's claim, which was premised on Conseco's "acceptance" of the April 21, 2003 disability date provided in the November 18, 2003 WOP claim form. As noted above, Conseco's duty of good faith was an ongoing vital obligation during the *entire* management of LeAnn's claim, and such duty *required* Conseco to reconsider its position and act accordingly. **See id**. at 1145.

As noted previously, when Conseco *first* undertook to investigate LeAnn's claim in December of 2006, it failed to contact USPS to determine the "substantial and material duties" of LeAnn's position at the time she was diagnosed with ovarian cancer, the last day she worked at USPS, or whether

---

[32] Although LeAnn advised Conseco in her initial claim forms that she "had been "unable to work in current occupation" from February 4, 2003, until May 6, 2003, Conseco was not previously advised that LeAnn had used sick and annual leave until June 14, 2003, or that her application for disability retirement status was approved on June 14, 2003.

she had, in fact, used annual and sick leave to extend her payroll status to June 14, 2003. Conseco also failed to contact the Social Security Administration to determine the basis for its award of disability retirement benefits to LeAnn, and the date of such award. Conseco further failed to contact any of LeAnn's treating physicians to determine when LeAnn first became unable, due to her ovarian cancer, to perform the "substantial and material duties" of her position at USPS.

If Conseco had conducted a meaningful investigation of LeAnn's claim or undertaken to "research" the new information supplied by LeAnn, such as by contacting USPS, the Social Security Administration, or LeAnn's treating physicians, Conseco would have determined that LeAnn had, in fact, been "unable due to cancer, to perform all the substantial and material duties of [her] regular occupation" since February 4, 2003, and that she had remained on the USPS payroll beyond that date by using her accrued sick and annual leave until June 14, 2003, when her application for disability retirement status was approved. Further, had Conseco conducted a good faith investigation of LeAnn's claim, it would have determined that premiums had been paid on the Cancer Policy throughout the applicable 90-day waiting period extending from LeAnn's true disability date, February 4, 2003, and that LeAnn was entitled to the WOP benefit provided by the Cancer Policy.

Conseco's failure to conduct an meaningful investigation of LeAnn's claim when it undertook to do so in December 2006, and its refusal to

reconsider its denial of coverage based on the new information provided by LeAnn in her November 30, 2006 letter, constituted new injuries to LeAnn. *See Romano*, 646 A.2d at 1232 (holding that bad faith conduct includes lack of good faith investigation); *see also Condio*, 899 A.2d at 1145 (holding that, if evidence arises that discredits the insurer's reasonable basis for denying a claim, the insurer's duty of good faith and fair dealing *requires* it to reconsider its position and act accordingly). Indeed, these injuries constitute subsequent and separately actionable instance of bad faith, distinct from and unrelated to Conseco's initial denial of monetary benefits to LeAnn or its decision to lapse the Cancer Policy. *See Adamski*, 738 A.2d at 1040. Thus, a new limitations period began to run on January 5, 2007, when Conseco communicated to LeAnn (1) the results of its inadequate investigation; and (2) its refusal to consider the new evidence she provided that discredited Conseco's basis for its denial of coverage. *See id*. (holding that a new limitations period begins to run from later acts of bad faith). Accordingly, LeAnn's bad faith claim, commenced on December 22, 2008, is not time-barred.[33]

---

[33] Although the Cancer Policy contained a suit limitations clause, such clauses operate to limit the insured's claims arising under the policy, such as a breach of contract claim. However, suit limitations clauses do not apply to bad faith claims because such claims do not arise under the insurance contract. *See March v. Paradise Mut. Ins. Co.*, 646 A.2d 1254, 1256 (Pa. Super. 1994) (holding that an insured's claim for bad faith brought pursuant to section 8371 is independent of the resolution of the underlying contract claim).

We note that the Dissent disagrees with our conclusion, and asserts that LeAnn's bad faith claim is time-barred. *See* Slip. Op. at 1-7. The Dissent asserts that, to the extent that LeAnn asserts a bad faith claim *based on Conseco's denial of monetary benefits*, the limitations period for such claim began to run on April 12, 2006, when Conseco first advised LeAnn that it could not pay any benefits to her because her coverage ended on May 24, 2003. *Id*. at 6. The Dissent also asserts that, to the extent that LeAnn asserts a bad faith claim *based on Conseco's decision to lapse the Cancer Policy*, the limitations period for such claim began to run "either on March 9, 2005, when Conseco first advised LeAnn that [the Cancer P]olicy had lapsed, or on September 21, 2006, when Conseco denied LeAnn's request for WOP and advised her that coverage had ended on May 24, 2003." *Id*.

However, the Dissent bases its conclusion on Conseco's denial of monetary benefits to LeAnn and its decision to lapse the Cancer Policy, without considering LeAnn claim for bad faith *based on Conseco's lack of good faith investigation*. As noted above, a claim for bad faith may be based on an insurer's investigative practices. *See Romano*, 646 A.2d at 1232 (holding that bad faith conduct includes lack of good faith investigation); *see also Condio*, 899 A.2d at 1142 (holding that, if evidence arises that discredits the insurer's reasonable basis for denying a claim, the insurer's duty of good faith and fair dealing *requires* it to reconsider its position and

- 43 -

act accordingly, and noting that the section 8371 good faith duty is an ongoing vital obligation during the *entire* management of the claim). In declining to acknowledge these tenets of Pennsylvania's bad faith law,[34] the Dissent has failed to acknowledge LeAnn's claims for bad faith *based on a lack of good faith investigation*, or identify the date(s) on which such claims accrued. Thus, we abide by our conclusion that LeAnn's bad faith claim is not time-barred.

In his second issue, Rancosky contends that the trial court should have considered Conseco's conduct during the bad faith trial as further evidence of its bad faith. Brief for Appellant at 61-65. Rancosky notes that that Conseco's Manual was admitted into evidence, without objection, at the breach of contract trial. *Id*. at 62. Rancosky points out that the Manual provides three ways to establish proof of disability: (1) a physician's

---

[34] While the Dissent cites several federal district court cases in support of its position, *none* of those cases involved an inadequate *initial* investigation, nor a request for reconsideration by an insured based on new information that discredited the insurer's basis for denial of the claim. Further, the Dissent's reliance upon *Jones v. Harleysville Mut. Ins. Co.*, 900 A.2d 855 (Pa. Super. 2006) is tenuous. *Jones* did not involve an inadequate *initial* investigation by the insurer. Moreover, to the extent that *Jones* involved a request for reconsideration, *Jones* was decided one week prior to *Condio* and, hence, lacked the benefit of the *Condio* Court's analysis. Further, while the insured in *Jones* requested that the insurer reconsider its denial of her property damage claim based on her acquittal of arson charges, there is nothing in the case that indicates whether, in the course of reviewing the transcript of the criminal proceedings, the insurer was presented with any new information that discredited its prior denial of coverage, which was based on multiple grounds, including arson, misrepresentation, fraud, various policy conditions that had not been satisfied, and the insured's failure to cooperate.

statement; (2) a claim form; or (3) a phone call to a policyowner's physician. *See* Trial Court Opinion, 11/26/14, at 3 (citing Rancosky's Exhibit 75 and N.T. (Breach of Contract Trial), 5/7/13, at 147-49). Rancosky asserts that, pursuant to the Manual, LeAnn's initial claim forms established her date of disability as February 4, 2003, and, accordingly, her entitlement to WOP. Brief for Appellant at 63. However, Rancosky contends, during the bad faith trial, Conseco's counsel objected to the admission of the Manual, and affirmatively stated that the Manual was not used by Conseco employees in adjusting claims. *Id*. at 64. Rancosky asserts that the trial court erred by not considering Conseco's litigation strategy to disavow the applicability of the Manual as further evidence of bad faith. *Id*. at 65.

Here, Rancosky did not raise this issue at any time before or during the bad faith trial. Indeed, Rancosky did not raise this issue until after the conclusion of the bad faith trial in a post-verdict Motion. In order to preserve an issue for appellate purposes, the party must make a timely and specific objection to ensure that the trial court has the opportunity to correct the alleged trial error. *See Shelhamer v. John Crane, Inc.*, 58 A.3d 767, 770 (Pa. Super. 2012); *see also* Pa.R.C.P. 227.1(b)(1); Pa.R.A.P. 302(a). Because Rancosky failed to raise any objection to Conseco's litigation

strategy or the conduct of Conseco's counsel until after trial, his claim is waived. *See Shelhamer*, 58 A.3d at 770.[35]

In his final issue, Rancosky contends that the trial court erred by entering summary judgment in favor of Conseco on Martin's claims. Brief for Appellant at 57. Rancosky asserts that, because LeAnn and Martin were focused on LeAnn's battle with ovarian cancer, they did not immediately notify Conseco of Martin's pancreatic cancer, which was diagnosed on October 28, 2004. *Id*. at 58. Rancosky claims that, because Conseco informed LeAnn of its decision to retroactively terminate the Cancer Policy five months after Martin's diagnosis, it would have been futile for Martin to submit his claim on a canceled policy. *Id*. Rancosky argues that the Complaint provided Conseco with notice of Martin's claim, and Conseco was provided with all of Martin's medical records during the litigation of this matter. *Id*. at 58-59. Rancosky contends that, despite the trial court's finding that Martin failed to provide Conseco with the correct form of notice in order for Conseco to evaluate his claim, all of the information required in a proof of loss form was provided to Conseco through litigation. *Id*. at 57-

---

[35] Even if this issue had not been waived, we could not grant relief to Rancosky. In the bad faith trial, David Rikkers ("Rikkers"), Conseco's Legal Interface Compliance Analyst, testified that the Manual "is not used for adjudicating these types of claims." Trial Court Opinion, 11/26/14, at 16-17 (citing N.T. (Bad Faith Trial), 6/27/14, at 78-79). Because the trial court found Rikkers's testimony to be "highly credible and informative," Trial Court Opinion, 11/26/14, at 16, we may not reweigh Rikkers's testimony regarding the Manual. *See Hollock*, 842 A.2d at 414.

59. Rancosky asserts that Conseco was not prejudiced by Martin's failure to submit a claim after Conseco had indicated its decision to lapse and retroactively terminate the Cancer Policy. *Id*. at 59.

> In analyzing the order of [a] trial court that granted summary judgment [], our scope of review is plenary. The standard of review is clear; we will reverse the order of the trial court only when the court committed an error of law or abused its discretion. Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Kvaerner Metals Div. Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 895-96 (Pa. 2006) (internal citations omitted).

Here, the trial court dismissed Martin's claims against Conseco on the basis that he "never provided [Conseco] with written notice of a claim or written proof of loss as required by the language of the [Cancer P]olicy." Trial Court Order, 3/21/12, at 1.

Pursuant to the Cancer Policy, Martin was required to provide written notice of his claim to Conseco "within 60 days after the start of an insured loss or as soon as reasonably possible." Cancer Policy, at 11. Additionally, Martin was required to provide written proof of loss to Conseco "within 90 days after the loss" or "as soon as reasonably possible" but "no later than one year plus 90 days from the date of loss." *Id*. Thus, Martin was

permitted to provide written notice of his claim beyond 60 days after his loss incepted, and written proof of loss beyond 90 days after his loss incepted, if it was not "reasonably possible" for him to provide notice within those time frames.

Here, Martin was diagnosed with pancreatic cancer on October 28, 2004. Five months later on March 9, 2005, Conseco retroactively terminated the Cancer Policy. Due to the fact that both Martin and LeAnn were battling cancer, it may not have been "reasonably possible" for Martin to provide written notice of his claim to Conseco within 60 days or written proof of loss within 90 days. Moreover, if it was not "reasonably possible" for Martin to provide such notice prior to March 9, 2005, Martin may not have been required to provide notice of his claim to Conseco, given Conseco's decision to retroactively terminate the Cancer Policy on that date. *See Arlotte v. Nat. Liberty Ins. Co.*, 167 A. 295, 296 (Pa. 1933) (holding that "[a]n insurer will not be permitted to take advantage of the failure of the insured to perform a condition precedent contained in the policy, where the insurer itself is the cause of the failure to perform the condition."); *see also Slater v. Gen. Cas. Co. of Am.*, 25 A.2d 697, 699-70 (Pa. 1942) (holding that, following the insurer's cancellation of the policy, the insured was not required to inform the insurer of a lawsuit filed against him, pursuant to the notice provisions of the policy, noting that the insured was "not required to do a vain thing.").

However, Rancosky has failed to identify any evidence, raised in opposition to Conseco's Motion for Summary Judgment, demonstrating that it was not "reasonably possible" for Martin to provide notice to Conseco before Conseco retroactively terminated the Cancer Policy. *See* Pa.R.C.P. 1035.3 (providing that, in order to oppose a motion for summary judgment, the adverse party may not rest upon mere allegations or denials of the pleadings but must identify one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion, or identify evidence in the record establishing the facts essential to the cause of action). Because Rancosky has failed to identify any evidence, presented in opposition to Conseco's Motion for Summary Judgment, that it was not "reasonably possible" for Martin to provide notice in compliance with the terms of the Cancer Policy, Rancosky has failed to demonstrate on appeal that he raised a genuine issue of material fact in the trial court. Thus, viewing the record in the light most favorable to Rancosky, as the nonmoving party, we cannot conclude that the trial court committed an error of law or abused its discretion in granting summary judgment in favor of Conseco and dismissing Martin's claims.

Therefore, we affirm the trial court's March 21, 2012 Order granting Conseco's Motion for summary judgment and dismissing Martin's claims. We also vacate in part the trial court's Judgment entered on August 1, 2014,

solely as it relates to LeAnn's claim for bad faith, and remand for a new trial on LeAnn's claim for bad faith.[36]

Order affirmed. Judgment vacated in part. Case remanded for further proceedings on LeAnn's bad faith claim. Jurisdiction relinquished.

Bender, P.J.E., joins the opinion.

Jenkins, J., files a concurring and dissenting opinion.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2015

---

[36] The judgment entered on August 1, 2014, as it relates to the jury's verdict in the breach of contract trial, is not before us and remains unaffected by our determination herein.