J-A28043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| KAREN AND ROBERT YAMIALKOWSKI, W/H, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| KENNETH M. BERRY, M.D. AND PROFESSIONAL EMERGENCY CARE, P.C. A/K/A ER-ONE INC. AND JAN JOHNSON, R.N. AND WAYNE MEMORIAL HOSPITAL AND WAYNE MEMORIAL HEALTH SYSTEM, INC., AND WAYNE MEMORIAL HEALTH FOUNDATION, INC., | |
| Appellees | No. 2280 EDA 2015 |

Appeal from the Judgment Entered July 6, 2015
in the Court of Common Pleas of Wayne County
Civil Division at No.: 461-Civil-2013

BEFORE:  PANELLA, J., SHOGAN, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JANUARY 24, 2017**

Appellants, Karen and Robert Yamialkowski, appeal from the judgment entered against them in favor of Appellees, Kenneth M. Berry, M.D., and Professional Emergency Care, P.C. a/k/a ER-One Inc., *et al.*, following a jury trial in this medical malpractice case.  We affirm.

The relevant facts and procedural history of this case are as follows. On September 17, 2012, Ms. Yamialkowski, who was then forty-nine years old, presented to the emergency room at Wayne Memorial Hospital with

_____

[*] Retired Senior Judge assigned to the Superior Court.

complaints of a migraine headache, chest pain, dizziness, and nausea. Dr. Berry treated Ms. Yamialkowski immediately, based on his belief that her medical condition was an emergency, and could progress to a stroke. Dr. Berry ordered an MRI, and intravenous administration of the drug Phenergan, which carried a black box warning.[1] Ms. Yamialkowski's symptoms resolved, but she returned to the emergency room two days later on September 19, 2012, complaining of swelling and pain in her left hand up to her forearm.

On August 27, 2013, Appellants filed a complaint alleging that during the emergency room visit Phenergan was improperly administered in Ms. Yamialkowski's left arm, causing her to suffer from Reflex Sympathetic Dystrophy/Complex Regional Pain Syndrome, as well as other injuries,

---

[1] A black box warning or a "boxed warning" is a type pf warning on the package insert for certain prescription drugs, formatted by a box or border around the text. The United States Food and Drug Administration uses a black box warning to signify that the drug carries a significant risk of serious or life threatening injuries. *See* FDA Consumer Health Information, www.fda.gov/consumers "Boxed Warning." Phenergan's warning states in pertinent part: "Injection can cause severe chemical irritation and damage to tissues regardless of the route of administration. . . . Due to the risks of intravenous injection, the preferred route of administration of Phenergan Injection is deep intramuscular injection." (Plaintiffs' Trial Exhibit 9) (emphases omitted). However, Appellees' expert, Dr. Michael Chansky, testified that administering Phenergan intravenously works well in treating migraine patients because it gets into the vein and goes to the brain quickly to alleviate the symptoms of headache and nausea. (*See* N.T. Trial, 5/19/15, at 40). He testified that he does not administer the drug intramuscularly for complex migraines with nausea because it is not nearly so effective as intravenous administration and is painful. (*See id.*).

including anguish, depression, and anxiety. The case proceeded to a jury trial on May 11, 2015.

Relevant to the instant appeal, during trial, Dr. Berry testified regarding his recollection of Ms. Yamialkowski's emergency room visit. (*See* N.T. Trial, 5/20/15, at 7-23). During cross-examination, Dr. Berry acknowledged that this testimony differed from his earlier, June 2014, deposition testimony, because during the deposition, he testified that he had no memory of treating Ms. Yamialkowski during the emergency room visit. (*See id.* at 29).

On May 22, 2015, the jury returned a verdict in favor of Appellees. On June 1, 2015, Appellants filed a motion for post-trial relief, seeking judgment notwithstanding the verdict (JNOV) or alternatively, a new trial. On July 6, 2015, the trial court denied the motion and entered judgment in favor of Appellees. Appellants filed a motion for reconsideration, which the trial court also denied. This timely appeal followed.[2]

Appellants raise the following issues for this Court's review:

> 1. Did the trial court err as a matter of law or abuse its discretion in failing to grant a new trial based on the surprise testimony and supposedly recovered recollection of [Appellee] Dr. Kenneth M. Berry, M.D., first disclosed during his testimony at trial, that he now remembered his treatment of [Appellant] Karen Yamialkowski in the emergency department of Wayne

_____

[2] Pursuant to the trial court's order, Appellants filed a timely concise statement of errors complained of on appeal on August 28, 2015. The trial court entered an opinion on October 13, 2015. *See* Pa.R.A.P. 1925.

Memorial Hospital on September 17, 2012, in direct contradiction of his discovery responses and deposition testimony, in which Dr. Berry asserted that he did not recall his treatment of Ms. Yamialkowski in the hospital's emergency department on that same date, which discovery responses and deposition testimony [Appellees] never corrected, supplemented, or updated, in clear violation of the requirements of Pennsylvania Rule of Civil Procedure 4007.4(2)(b), to the substantial prejudice of [Appellants]?

2. Did the trial court err as a matter of law or abuse its discretion in failing to grant a new trial notwithstanding that the trial court had made repeated prejudicial remarks to the jury and repeatedly admonished [Appellants'] counsel during her cross-examination of Dr. Berry, including statements that [Appellants'] cross-examination and the trial were taking too long and were wasteful of the trial court's and the jurors' time?

3. Did the trial court err as a matter of law or abuse its discretion in failing either to grant a new trial or, at the very least, to hold a hearing concerning whether juror number 11's failure to disclose that her husband had a close business relationship with Wayne County Memorial Hospital and its finances resulted in the improper empaneling of juror number 11, who had she given truthful answers in *voir dire* would have been dismissed from service on the jury for cause by the trial court or via use of one of the [Appellants'] peremptory challenges?

4. Did the trial court err as a matter of law or abuse its discretion in failing to grant a new trial or judgment notwithstanding the verdict as to liability in favor of [Appellants] given that the jury's finding of no liability was against all or, at the very least, the manifest weight of the evidence, and even [Appellees'] medical expert conceded that the drug whose administration caused severe injury to [Ms. Yamialkowski's] hand and arm was negligently and improperly administered?

(Appellants' Brief, at 2-4).

An appellate court will reverse a trial court's grant or denial of a JNOV only when the appellate court finds an abuse of discretion or an error of law. Our scope of review with respect to

- 4 -

whether judgment n.o.v. is appropriate is plenary, as with any review of questions of law.

> In reviewing a motion for judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. Moreover, a judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner. Further, a judge's appraisement of evidence is not to be based on how he would have voted had he been a member of the jury, but on the facts as they come through the sieve of the jury's deliberations.
>
> There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law, . . . and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant[.] With the first a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

Questions of credibility and conflicts in the evidence are for the [fact-finder] to resolve and the reviewing court should not reweigh the evidence. If there is any basis upon which the jury could have properly made its award, the denial of the motion for judgment n.o.v. must be affirmed.

In reviewing a trial court's denial of a motion for a new trial, the standard of review for an appellate court is as follows:

> [I]t is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial.

\*     \*     \*

Thus, when analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial court abused its discretion.

Moreover, our review must be tailored to a well-settled, two-part analysis:

We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial.

***Gurley v. Janssen Pharm., Inc.***, 113 A.3d 283, 288–89 (Pa. Super. 2015) (citations omitted).

Appellants first argue that, pursuant to Pennsylvania Rule of Civil Procedure 4007.4(2)(b), Appellees were required to amend Dr. Berry's deposition testimony prior to trial to reflect that his memory of his emergency room treatment of Ms. Yamialkowski had been restored. (**See** Appellants' Brief, at 20-28). Appellants contend Appellees had an obligation to notify them "[Dr. Berry's] deposition testimony that may have been truthful when given . . . was no longer true and correct at a later point." (**Id.** at 23). Appellants further maintain that this failure to update them deprived them of a fair trial because Appellees "ambush[ed]" them on the subject of Dr. Berry's decision-making during the emergency room visit. (**Id.** at 28; **see id.** at 26-28). This issue does not merit relief.

Rule 4007.4(2)(b) states:

A party or an expert witness who has responded to a request for discovery with a response that was complete when made is under **no duty** to supplement the response to include information thereafter acquired, **except** as follows:

\* \* \*

(2) A party or an expert witness is under a duty seasonably to amend a prior response if he or she **obtains information** upon the basis of which he or she knows that . . . (b) the response though correct when made is no longer true.

Pa.R.C.P. 4007.4(2)(b) (emphases added).

The comment to the Rule provides in relevant part: "The automatic obligation **is limited to** . . . (b) amendment of a prior answer if a party or expert witness **obtains information** on the basis of which he knows that the original response was incorrect, or, if correct when originally made, is no longer true." Pa.R.C.P. 4007.4, comment (emphases added).

Here, Dr. Berry testified at trial that he recalled certain aspects of Ms. Yamialkowski's emergency room visit, but that he did not recall other aspects. (**See** N.T. Trial, 5/20/15, at 7-8). On cross-examination, Dr. Berry acknowledged that during his deposition, he did not recall his actual emergency room treatment of Ms. Yamialkowski, but clarified, "at this time I do recall certain things." (**Id.** at 30; **see id.** at 29). When Appellants' counsel questioned him regarding this discrepancy, Dr. Berry explained that he had initially confused Ms. Yamialkowski with another patient who presented with similar symptoms, and that his memories "fell into place for [him]" after this other patient returned to the emergency room as a visitor.

(*Id.* at 34; *see id.* at 30, 33-34). Appellants' counsel noted that Dr. Berry was "changing" his testimony, and proceeded to cross-examine him extensively, questioning his "sudden memory" and credibility. (*Id.* at 30, 34; *see id.* at 29-36).

Upon review, we conclude that Dr. Berry's refreshed or changed recollection is not "obtain[ed] information," and therefore does not fall under the ambit of Rule 4007.4.[3] Pa.R.C.P. 4007.4(2)(b). Furthermore, we agree with the trial court that: this was an issue of credibility; Appellants' counsel vigorously challenged Dr. Berry's credibility on cross-examination; and it was for the jury to decide whether to believe his testimony. (*See* Trial Court Opinion, 10/13/15, at 3); *see also Dubose v. Quinlan*, 125 A.3d 1231, 1244 (Pa. Super. 2015), *appeal granted in part*, 138 A.3d 610 (Pa. 2016) ("matters of credibility are for the jury, and they are free to believe all, part, or none of the evidence presented."). Therefore, Appellants' first claim does not merit relief.

_____

[3] We note that Appellants' reliance on **Leahy v. McClain**, 732 A.2d 619 (Pa. Super. 1999), *appeal denied*, 751 A.2d 192 (Pa. 1999), is misplaced. (**See** Appellants' Brief, at 24-25). In **Leahy**, this Court determined the trial court properly excluded photographs from introduction at trial where the appellant failed to amend her response to interrogatories and request for production of documents "when she came into possession of [] new material that was not included in her previous response." **Leahy**, *supra* at 624. Here, Dr. Berry did not come into possession of any new material, and the facts of **Leahy** are inapposite to the instant case.

In their second issue, Appellants' argue the trial court displayed a one-sided animosity towards their counsel during Dr. Berry's testimony, by repeatedly admonishing that her cross-examination was too lengthy and wasteful of the court's and the jury's time. (*See* Appellants' Brief, at 29-40). Appellants maintain that the court's behavior demonstrated a bias in favor of Appellees, communicated to the jury that it should decide the case against Appellants, and was prejudicial to an extent necessitating a new trial. (*See id.* at 37-40). This issue is waived and would not merit relief.

It is well-settled that "[i]n order to preserve an issue for appellate purposes, the party must make a timely and specific objection to ensure that the trial court has the opportunity to correct the alleged trial error." ***Rancosky v. Washington Nat. Ins. Co.***, 130 A.3d 79, 102 (Pa. Super. 2015), *appeal denied*, 145 A.3d 727 (Pa. 2016) (citations omitted).

Here, a review of the record reflects Appellants' counsel failed to object contemporaneously to the trial court's allegedly improper comments. (***See*** N.T. Trial, 5/20/15, at 98). When counsel raised the issue in chambers the following morning, she requested a curative jury instruction, and expressly stated that she was not asking for a mistrial. (***See*** N.T. Chamber Conference, 5/21/15, at 35-36). The court gave a curative instruction to the jury immediately thereafter, noting that it was not blaming either party for the length of the trial. (***See*** N.T. Trial, 5/21/15, at 2). Appellants' counsel did not object to the instruction. (***See id.***). Accordingly, Appellants' second claim is waived. ***See Rancosky***, ***supra*** at 102.

Moreover, after review of the trial court's comments in context, we find Appellants' description of them as an "outburst" and "improper[] behav[ior]" a disingenuous mischaracterization, which is belied by the record. (Appellants' Brief, at 31, 37). Appellants' second issue is specious.

Appellants next challenge the trial court's decision not to grant a new trial, or to hold a hearing after the trial concluded, on the basis of Juror Number Eleven's (Kimberly Rickard's) failure to disclose her husband's close working relationship with Appellee hospital. (**See** Appellants' Brief, at 40-45). Appellants baldly allege they learned, through their investigation of Ms. Rickard **after** trial, that her husband: worked as planning director for the Wayne County Department of Planning; attended meetings with hospital officials; and was involved in directing county funds to the hospital. (**See** **id.** at 42; Appellants' Motion for Post-Trial Relief, 6/01/15, at 9 ¶ 36). This issue is waived.

As the trial court explained:

> At the time the jury was impaneled in the present case, [Appellants] did not ascertain the existence of any reasons for objection to the jurors. [Appellants], therefore, neither objected to any potential juror who remained impaneled nor did they raise any objection when the final jury was sworn in. Because [Appellants] failed to object at the proper time, they have waived that right. Such a waiver may not be excused in this case because there is no evidence that [Appellants] were intentionally misled or deceived by juror number eleven or the opposing party.

(Trial Ct. Op., at 5).

We agree with the trial court that Appellants waived this issue by failing to timely object to Ms. Rickard's service on the jury. *See Rancosky*, *supra* at 102; *see also* Pa.R.A.P. 302(a). Furthermore, a review of Appellants' post-trial motion reflects they **never asked the court** to hold a hearing to substantiate their bare allegations regarding Ms. Rickard's husband. (*See* Appellants' Motion for Post-Trial Relief, 6/01/15, at 1-11). They simply asked the court to grant a new trial based on their unsupported assertions. (*See id.* at 11). Therefore, Appellants' third issue is waived.

In their final issue, Appellants challenge the weight of the evidence supporting the jury's verdict. (*See* Appellants' Brief, at 46-50). Appellants argue that the jury ignored the "uncontested evidence" of Appellees' negligence in rendering its verdict. (*Id.* at 49). This issue does not merit relief.

> In evaluating a claim that a verdict is against the weight of the evidence, Pennsylvania courts employ a shocks-the-conscience litmus. The trial judge's authority to award a new trial on weight-of-the-evidence grounds is narrowly circumscribed on account of the principle that credibility questions are exclusively for the fact finder. The matter is couched as discretionary in the trial court, with its role in the assessment being afforded primacy in view of its substantially closer vantage to the evidentiary presentation as compared to that of an appellate court. Relief is available in an appellate court only if it can be said that the trial court acted capriciously or palpably abused its discretion.

*Hatwood v. Hosp. of the Univ. of Pennsylvania*, 55 A.3d 1229, 1238 (Pa. Super. 2012), *appeal denied*, 65 A.3d 414 (Pa. 2013) (citation omitted).

Here, in ruling on Appellants' weight claim, the trial court determined:

. . . [T]he jury heard expert testimony from both parties. [Appellants'] experts testified that [Appellees] deviated from the standard of care and [Appellees'] experts testified that [Appellees] did not deviate from the standard of care. Whether [Appellees] did in fact deviate from the standard of care was a question of fact for the jury to decide and the jury chose to believe [Appellees'] experts. . . . The evidence in this case was conflicting and the jury could have found for either party.

(Trial Ct. Op., at 5).

Because there was conflicting evidence presented at trial, which was presented properly to the fact-finder, we cannot conclude that the trial court acted capriciously or palpably abused its discretion in denying Appellants' weight claim. **See Hatwood**, **supra** at 1238; (**see also, e.g.**, N.T. Trial, 5/19/15, at 28 (Dr. Michael Chansky's testimony that Appellees' administration of Phenergan did not deviate from standard of care); N.T. Trial, 5/13/15, at 67 (Dr. David Brown's testimony that Appellees' administration of Phenergan was below standard of care)). Accordingly, Appellants' final issue does not merit relief.

Judgment affirmed.

Judge Shogan joins the Memorandum.

Judge Panella concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/24/2017